PEMROCK, INC. *v.* ESSCO CO., INC., ET AL.

[No. 78, September Term, 1968.]

*Decided February 10, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, SINGLEY and SMITH, JJ.

*Hamilton P. Fox*, with whom were *Hearne, Fox & Bailey* on the brief, for appellant.

*Ernest M. Thompson*, with whom were *Dorothy H. Thompson* and *Stanley G. Robins* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Involved in this appeal are the pertinence of the doctrine of election of remedies and of the collateral source rule, and the effect of a release in favor of all of mankind.

Pemrock, Inc. of Wicomico County, engaged Essco Co., Inc., to erect two prefabricated poultry houses of a design which eliminated most vertical supports, supplied by Anderson Box Company, Inc. About a year after Pemrock had accepted the houses from the builder and begun to use them, a storm with

strong winds and heavy snow struck and soon the houses collapsed with great resultant damage. The New Castle Mutual Insurance Co. had insured the houses up to $40,000 against all direct loss by windstorm, including damages to the interior and property therein caused by direct action of the wind.

Pemrock and First National Bank of Maryland, its mortgagee, sued New Castle which impleaded Essco and. Anderson on the claim that there had not been a direct loss caused by wind but rather a loss resulting proximately from faulty materials and negligent construction.[1] No point was made below or here that this was not a proper case for impleader.

Pemrock then filed an amended declaration in two counts, the first claiming from New Castle on the insurance policy, and the second claiming against Essco and Anderson for their negligence. There was a mistrial, and Pemrock thereafter succeeded in having an equity court reform the policy to show clearly that there had been windstorm coverage. New Castle appealed and during the pendency of the appeal Pemrock settled with New Castle for $10,000 and executed an order which was filed in the case in the following language:

> "Please mark the above case agreed, settled, satisfied and dismissed with prejudice as to the defendant, New Castle Mutual Insurance Co., only."

Pemrock and First National Bank of Maryland each also executed a writing under seal, which provided that in consideration of $10,000 they released New Castle,

> "and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and

---

1. The First National Bank of Maryland was paid off and is no longer in the case, although it joined Pemrock in releasing New Castle and the rest of the world.

property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 30th day of January, 1966 at or near Pemberton Drive, Rt. 5, Salisbury, Wicomico County, Maryland, and particularly with reference to any Company liability under its Policy No. 49651 dated August 1, 1964, issued to Pemrock, Inc., and all endorsements made and attachable or attached thereto."

Essco and Anderson thereupon each moved for summary judgment, on the basis of the order of satisfaction and the release. Pemrock answered, alleging that the effect of the order of satisfaction was only to terminate the case as if there had been an adjudication in favor of New Castle and that the filing of the order was equivalent to a finding that the poultry houses had not been destroyed by windstorm, so that there was no bar to further proceedings against Essco and Anderson. The answer further alleged that the release was no more than "an agreement not to sue the New Castle Mutual Insurance Company given pursuant to an agreement [handwritten between New Castle's lawyer and Pemrock's lawyer], a copy of which is attached hereto," that New Castle will pay $10,000 for Pemrock's order of satisfaction running to New Castle alone, retaining the action of Pemrock, Inc. against all other defendants and this agreement is the real agreement between Pemrock and New Castle and Essco and Anderson are not parties to it and cannot claim any benefit by it. No mention was made in the handwritten memorandum of a release. New Castle's lawyer made an affidavit in support of Pemrock's answer, in which he said, *inter alia.*

"there was no intention * * * to enlarge or change our agreement * * * by the execution * * * of the general release under date of September 21, 1967; and that it was not our intention that the release given to [New Castle] * * * should release any of the other parties to these proceedings as [New Castle] was acting only for itself * * *."

Essco moved that the parts of Pemrock's answer setting forth

its construction of the order of satisfaction and the handwritten memorandum attached to its answer and relied on by it to limit the effect of its release be not received or, if already received, stricken on the grounds that the memorandum was not under seal and could not be used to vary the release which was under seal, and that prior negotiations and agreements had been merged in the final integration.

Judges Travers and Mace granted summary judgments in favor of Essco and Anderson after striking out the handwritten memorandum and the parts of Pemrock's answer Essco had moved be stricken. Pemrock did not challenge these actions in brief or oral argument, although it did argue the release was ineffective to bar its claim against Essco and Anderson. Under the view we take of the matter the outcome would be the same whether or not the handwritten memorandum and Pemrock's full answer had or had not been before and considered by the trial court. The court relied on the doctrine of election of remedies that a litigant shall not be allowed to approbate and reprobate, after first rejecting Pemrock's right to avail itself of the benefit of the collateral source rule (which requires a tortfeasor to pay in full the damages suffered by the injured person, without credit for amounts received by the injured person from other sources such as an employer or an insurer), saying:

> "Our understanding of the 'Collateral source rule' makes it unavailable to the plaintiff in this case because the two claims here are as divergent and inconsistent as is possible under any given circumstance. Double redress for a single wrong is, in our belief, never permitted where the causes of action are inconsistent."

The doctrine of election of remedies has been said to be a rule of procedure or judicial administration rather than one of substantive law, and to be equitable in nature. Although it has been widely recognized, it has also been criticized strongly, particularly since the advent of modern procedural rules. Some United States Courts have said the doctrine is no longer applicable under federal rules of procedure. 25 Am. Jur. 2d, *Election of Remedies*, §§ 1, 2, 3.

The Maryland Rules ease the fear of inconsistency that was said to be the hobgoblin of little minds and permit the pleading of alternative inconsistent claims. Rule 313 a permits a plaintiff to join in one action either as independent or alternative claims as many claims as he may have against a defendant, and Rule 313 c provides that where the plaintiff is uncertain against which of several persons he is entitled to relief, he may join any or all of them as defendants in the alternative, although the claim or right to relief against one may be inconsistent with the claim or right to relief against the other. Rule 301 d provides that a party in any action may plead in answer to any pleading cumulatively or in the alternative as many matters as he may deem necessary regardless of consistency. In *Petillo v. Stein,* 184 Md. 644, 652, this Court said that the doctrine of election of remedies is a severe one "which it is now generally held should not be extended."

The cases have said that if one claim or remedy is pursued to judgment an inconsistent claim is thereafter barred. *Bolton Mines Co. v. Stokes,* 82 Md. 50; *Kirchner v. Allied Contractors, Inc.,* 213 Md. 31; *Travelers Indemnity Co. v. Nationwide Construction Corporation,* 244 Md. 401, 416. The theory of the Maryland statements seems to have been that the plaintiff may not again vex the same defendant if he has already taken judgment against him for the same wrong. *Hamlin Mach. Co. v. Holtite,* 197 Md. 148. None of the cases cited just above involved a settlement without judgment or inconsistent claims against separate defendants and the collateral source rule was not considered in them in relation to the doctrine of election of inconsistent rights or remedies, although there are cases in other States of settlements and separate defendants which support the decision of the trial court.

Various cases in Mayland have said or held that there can be but one recovery for a single wrong, whether the wrongdoers are joint tortfeasors or not. See, for examples, *Lanahan v. Heaver,* 79 Md. 413; *Cox v. Md. Elec. Rwys.,* 126 Md. 300; *Grantham v. Prince George's County,* 251 Md. 28, but none is fully comparable to the case before us on the facts.

We are entirely persuaded that Pemrock is barred as a matter of law by reason of the release it gave New Castle from

proceeding against Essco and Anderson and that no useful or beneficial purpose would be served by discussing further or deciding the applicability to the case before us of the doctrines and rules of law to which we have referred.

For a substantial valuable consideration Pemrock and New Castle integrated their ultimate understandings and agreements in a release under seal, which in literal, plain, unambiguous words acquitted and discharged forever not only New Castle but all other persons, firms, corporations, associations and partnerships from known and unknown, foreseen and unforeseen bodily and personal injury and property damage and the consequences thereof resulting or to result from the accident, casualty or event of the collapse of the poultry houses on January 30.

The release provided further that Pemrock and First National Bank of Maryland declared and represented

"that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital."

In *Glass v. Doctors Hospital,* 213 Md. 44, 57-58, in deciding that the releasor (who conceded that the literal language of the release covered a claim preexisting the release and that he had read and understood the release and there was no fraud, mistake or duress in its execution) could not testify that he had not intended the release to cover the claim he now asserted, we said:

"We think the chancellor was clearly justified in refusing to hear extrinsic evidence as to what the appellant intended the release to mean or what he thought it was intended to cover. Stated broadly, the rule is that as a matter of substantive law, parol evidence is inadmissible to vary, alter or contradict a writing which is complete, unambiguous and valid, where no fraud, accident or mistake is claimed. The rule is applied in equity and a release, as a contractual instrument, is subject to its effects. The text writers, in

analyzing the rule as stated, have taken note of the many important limitations and exceptions to the rule and of the fact that the definition of it may assume what must be determined in deciding whether it is operative. See *McCormick on Evidence,* Chap. 24; *9 Wigmore on Evidence,* 3rd Ed., Sec. 2400, *et seq.; 3 Williston on Contracts,* Rev. Ed., Sec. 629, *et seq.; Restatement, Contracts,* Secs. 237-244 (and Secs. 228-236 on Integration) ; *3 Corbin on Contracts,* Chap. 26. In *Ray v. Eurice,* 201 Md. 115, 125, 127, we said that absent fraud or duress, "* * * if a contract has been integrated, it may not be varied by parol in the absence of mutual mistake, nor will it be rescinded or redrafted by the Court if one of the parties finds that he has made a bad deal or has become dissatisfied with its provisions. * * * Finally, where there has been an integration of an agreement, those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean. The test in such case is objective and not subjective."

Later in the opinion we added:

"We have found no authority that would justify the introduction of extrinsic evidence to show that the right claimed by Dr. Glass was not covered by the words of the release. See *3 Corbin on Contracts,* referred to above, where the author in Sec. 574, note 16, cites cases in support of the proposition that: 'In like manner, a general release of all claims operates exactly as it reads, so long as it is not avoided for fraud or mistake. An antecedent claim cannot be enforced by making proof that it was not included within the terms of the release. The words have no ambiguity, are later in time than the understanding now offered in evidence, and are in direct contradiction of that evidence.' *6 Williston on Contracts,* Rev. Ed., Sec. 1825, p. 5169, note 4; 32 C.J.S., *Evidence,* Sec. 927. For cases holding that a general release may not be impeached by extrinsic evidence, see *Tupper v. Hancock* (Mass.),

64 N.E.2d 441, 443; *Crow v. Bowers* (Ga.), 51 S.E. 2d 855; *Schar v. Maier* (Pa.), 49 A. 2d 387; *Miller v. Gane* (Mass.), 192 N. E. 313; *Radovsky v. Wexler* (Mass.), 173 N. E. 409." [213 Md. at 61]

*Thomas v. Erie Ins. Exchange,* 229 Md. 332, five judges concurring and two dissenting, held that a release given upon settlement by a claimant to the automobile driver she had sued for damages resulting from an accident on August 16, 1959, and to "all other persons, firms or corporations liable or who might be claimed to be liable * * *, from any and all claims * * * which have resulted or may in the future develop * * *" from an accident on August 16, 1959 barred the claimant from recovering from the driver's insurer medical expense payments of which the claimant would otherwise have been a third party beneficiary, and otherwise would have received twice, once in the settlement and once under the policy. It was stipulated that the claimant, were she present at the trial, would testify that she had no intention of releasing the medical pay benefits by signing the release. We said:

> "There is nothing to indicate bad faith on the part of the appellee to show that it knew or suspected that the appellant did not fully understand the import and effect of the paper she signed. There was no duty imposed on the appellee to explain the effect of the release when she had ample opportunity to read the instrument, capacity to understand it, and was represented by counsel during the negotiations when her special damages for medical expenses were discussed. She is chargeable with her own carelessness or failure to appreciate the legal effect of the instrument she signed. [citing *Glass* and *Ray v. Eurice,* and various other authorities]." [229 Md. at 339]

In the 1964 pocket parts of 3 *Corbin on Contracts* § 574 n. 16, Professor Corbin cites *Thomas v. Erie* with approval and expressed surprise that in such a case two judges would dissent. See *Lanasa v. Beggs,* 159 Md. 311, 322, where Judge Parke for the Court said:

"The court must construe an instrument according to its plain meaning and legal effect, and will not be diverted from this course by self-serving declarations of the interested parties that conflict with the object and clear meaning of the document. The provisos that the instrument in question is not a release and that the right to recover for the same injury against the other wrongdoer remains unimpaired are nugatory, because repugnant to the primary meaning and legal effect and operation of the instrument itself. *Gunther v. Lee,* 45 Md. 60, 67."

See also *Panichella v. Pennsylvania Railroad Company* (3d Cir.), 268 F. 2d 72, *cert. denied* 361 U. S. 932, 4 L.Ed.2d 353, where Panichella sued his employer, the railroad, which impleaded the owner of a restaurant to which he had gone at the railroad's direction, to eat and on whose sidewalk he had fallen on ice. Panichella settled with the restaurant owner and gave a release just like that in the case before us. The Court held that the release barred his claim against the railroad, although it was not named in the release and had no knowledge of the settlement or of the release until over a month after its execution. In *Canillas v. Joseph H. Carter, Inc.* (S.D.N.Y.), 280 F. Supp. 48, Judge Bryan in discussing the three rules as to joint tortfeasors—the common law rule that a release to one releases all others, the Restatement rule that a release to one releases all unless there is a reservation of right and the Uniform rule that the release of one does not release others liable unless the release so provides—, said of the *Panichella* release:

"There, the release * * * expressly provided for the discharge of all other persons, firms and corporations from liability, and thus was a bar under any of the three rules which have been mentioned." [280 F. Supp. at 53]

In *Oxford Commercial Corporation v. Landau* (N. Y.), 190 N.E.2d 230, Oxford sued its accountants for allegedly having aided a director to siphon off corporate assets for his personal benefit. The director had settled the corporation's claim against

him and taken a release in which Oxford agreed it would not bring "any suit against any person whomsoever" except several specifically named, the accountants not being so named. Judge Fuld for the Court held the release a bar to the suit against the accountants, saying:

> "It is too well settled for citation that, if a written agreement contains no obvious or latent ambiguities, neither the parties nor their privies may testify to what the parties meant but failed to state. Although it is sometimes broadly observed that the parol evidence rule has no application to any except parties to the instrument * * * it is clear that in the case of a fully integrated agreement, where parol evidence is offered to vary its terms, the rule operates to protect all whose rights depend upon the instrument even though they were not parties to it. * * *

> "In the case before us, the plaintiff's agreement not to sue 'any person whomsoever' except those specifically named is too clear and precise to admit of evidence that the parties intended to exclude the defendants from this all-inclusive category." [190 N.E.2d 231]

We find the present case to be controlled by *Thomas v. Erie* and the authorities which have been cited in support of it.

*Judgment affirmed, with costs.*