Katherine R. SHEPPARD, Plaintiff-Appellant,

v.

The WEST VIRGINIA BOARD OF REGENTS, a corporation, et al., Defendants-Appellees.

No. 74-2077.

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1975.

Decided May 29, 1975.

James B. McIntyre and Stephen P. Swisher (McIntyre & Swisher, on brief), for plaintiff-appellant.

William R. Wooton, Asst. Atty. Gen. (Chancey H. Browning, Jr., Atty. Gen., on brief), for defendants-appellees.

Before ALDRICH, Senior Circuit Judge,[*] FIELD, Circuit Judge, and THOMSEN, Senior District Judge.

THOMSEN, Senior District Judge.

Plaintiff appeals from the dismissal of her action, which sought an order compelling defendants to reemploy her as an assistant professor of chemistry at West Virginia Institute of Technology for the 1973–74 academic year, until just cause for dismissing her is shown after a hearing, and to recover any wages and benefits to which she would have been entitled as such an employee. No First Amendment violation is claimed; plaintiff asserts the deprivation of a property right, and bases jurisdiction on 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The case turns on the question whether plaintiff had a property interest in continued employment when she was notified in May 1972 that her contract would not be renewed after the 1972–73 academic year.

## I.

In August 1967 plaintiff, who had had no previous college teaching experience, was employed as an instructor in chemistry at West Virginia Institute of Technology for the school year 1967–68. At that time the faculty handbook of the Institute contained the provisions set out in note 1 in the margin.

In August 1968 the West Virginia Board of Education[2] approved regulations which contained the following provisions:

"A person who has not had at least three years of college or university teaching experience and who is employed to teach in any college or university under the jurisdiction of the West Virginia Board of Regents shall be on probationary status for at least five years. At the end of this period the president shall recommend to the governing board either that the probationary faculty member be placed on

---

[*] of the First Circuit, sitting by designation.

1. "Tenure

"A. Tenure is not granted automatically, but is the result of action by the West Virginia Board of Education upon the recommendation of the President of the College. Tenure status may be attained by all teaching personnel with the rank of assistant professor, associate professor, and professor.

"B. A new appointee who has previously taught on the college level three or more years is subject to a three year probationary period before tenure is acquired. The probationary period is five years for persons with less than three years of previous college teaching experience.

"C. Dismissal of persons on tenure shall be for adequate cause, including incompetency, immorality, insubordination, physical or mental disability, proven disloyalty to the country, or because of a bona fide financial exigency."

2. At that time, management and control of the Institute, including faculty appointments, were within the powers and jurisdiction of the institution's president and the West Virginia Board of Education. W.Va.Code, § 18–2–1 (Michie 1961).

tenure or that his employment be discontinued at the end of the contractual period. In the latter event, notice shall be given at least one year prior to the expiration of the probationary period."

Those provisions were retained by the West Virginia Board of Regents, which succeeded the Board of Education in 1969,[3] and were included in a revised faculty handbook.

Plaintiff's contract was renewed for the academic years 1968–69, 1969–70 and 1970–71 (her second, third and fourth years). At the end of her fourth year she was advanced from instructor to assistant professor, and served as such during 1971–72 (her fifth year).

In February 1972, three months before the expiration of her fifth year, the Vice President of the Institute notified plaintiff that her contract would not be renewed for the 1972–73 academic year.[4] Plaintiff requested the Board of Regents to reconsider her non-reappointment in the light of the existing notice provisions.[5] In April 1972 the Board ordered the President of the Institute to offer plaintiff reappointment for the academic year 1972–73.[6]

Thereupon, the Vice President of the Institute sent plaintiff a letter enclosing her contract for the 1972–73 academic year (plaintiff's sixth year) and notifying her that her contract would not be renewed after the 1972–73 academic year.

Plaintiff protested to the President of the Institute in September 1972, claiming that her promotion from instructor to assistant professor at the end of her fourth year (1970–71) and the failure to give her one year's notice of non-reappointment at that time implied the granting to tenure to her after she completed her fifth year of teaching at the Institute. She requested that her name be submitted to the Board of Regents "for the granting of tenure as set forth in the Faculty Handbook", and that the notice of non-reappointment be retracted. After this request was denied by the President, plaintiff appealed to the Faculty Status Committee, which held a hearing and adopted the following recommendation, which was sent to the President of the Institute:

"It is the belief of this committee that institutional precedent has established, within the guidelines set forth by the West Virginia Board of Regents, a probationary period of five years for faculty members without prior college teaching experience. This precedent has been violated in the case of Professor Katherine R. Sheppard.

"This committee therefore recommends that a recommendation for tenure for Mrs. Sheppard be submitted to the Board of Regents."

The President replied, stating that there was "no need to review tenure status for Mrs. Sheppard".

---

**3.** See W.Va.Code, §§ 18–16–1 and 18–26–12 (1971 Replacement Volume).

**4.** The stated reason was:

" * * * to comply with the Board of Regents guidelines on student-credit hour production and to meet faculty needs elsewhere in our institution, it has been necessary to eliminate a position in your department. * * *

"Your non-reappointment does not reflect adversely on your performance as a faculty member at Tech. Further, should a vacancy for which you are qualified occur in another position in your department or in the college, your application would receive priority. * * * *"

**5.** The Board of Regents had adopted regulations, in force in May 1972. Among those regulations were:

"*Notice of Nonreappointment*

"Notice of nonreappointment, or of intention not to recommend reappointment, to the West Virginia Board of Regents, will be given in writing in accordance with the following standards:

" * * *

"3. At least twelve months before the expiration of an appointment after two or more years in the institution."

**6.** The Chancellor's letter to the President stated: "While your decision was in keeping with the Board's policy concerning increased credit hour productivity and faculty-student ratios, it is the decision of the Board of Regents that existing personnel policies entitle these faculty members to receive notice one year prior to termination of their services."

On May 24, 1973, plaintiff's husband, who is an attorney, wrote the Chancellor of the Board of Regents on her behalf, setting out in detail the relevant facts and plaintiff's contention: that under the employment policies of the Board of Regents, as incorporated in the Faculty Handbook and made a part of her contract, statements made to her and incorporated in the records of the institution, and the conclusion of the Faculty Status Committee with respect to "institutional precedent", plaintiff was entitled to tenure and a contract for the 1973–74 academic year. A hearing at the next meeting of the Board of Regents was requested.

On August 14, 1973, the Chancellor replied, stating that the Board had met on that day, reviewed and discussed plaintiff's non-reappointment, and had unanimously resolved that the Board " * * * finds the notice of non-reappointment and President Nelson's action to be in conformity with the regulations of the Board of Regents and therefore denies the appeal and upholds and affirms the action of the President of West Virginia Institute of Technology". Plaintiff filed her complaint herein on February 5, 1974.

## II

▇▇▇ The complaint asserts jurisdiction under the Ninth and Fourteenth Amendments, 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The district court held that the relief requested could not be granted against the Board of Regents or its members in their official capacities. It is not necessary for us to decide this question, because the members of the Board were sued individually, and the court had jurisdiction to grant the relief requested against them. Harper v. Kloster, 486 F.2d 1134 (4 Cir. 1973); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).[7]

Plaintiff contends that when, at the end of her fourth year, she was not told that her contract would be discontinued at the conclusion of her fifth year, but was promoted to assistant professor, she acquired an implied right to tenure, which she claims constitutes a property interest in continued employment sufficient to invoke procedural due process protection.

▇▇▇ The tenure regulation adopted by the Board of Education in 1968 and continued in effect by the Board of Regents is set out above in the body of this opinion. The district court concluded that under the regulations faculty tenure is not granted automatically, but requires positive and affirmative action; that plaintiff was not granted tenure; and that she had no property right in or legal expectancy of further employment.

If this case were remanded to the district court, plaintiff, in order to prevail, would be required to establish the existence of a mutually explicit understanding at the Institute in 1972 that a person in her position at the conclusion of the fifth year of employment had in effect acquired tenure. Since the regulation in force prior to 1968 provided for a probationary period of exactly five years, the practice of granting tenure under that regulation would not be controlling in plaintiff's case. Showing that prior to 1968 employees were regularly granted tenure after five years would merely establish that the regulation then in effect was not violated or arbitrarily applied.

As we have seen, the 1968 regulation provided for a probationary period of "at least five years" (rather than "five years"), and did not explicitly require the president of the institution to make his decision whether to recommend tenure before the end of the fifth year. To accept plaintiff's contention would mean that the president must make his decision at the end of four years, when the regulation, whatever effect is given to

7. Nor is the action against them barred by the Eleventh Amendment, as defendants contend. Griffin v. School Board, 377 U.S. 218, 228, 84 S.Ct. 1226, 12 L.Ed.2d 256. See Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), decided after the decision of the district court.

the words "at least",[8] clearly provides for five years. Although, taken as a whole, the regulation is not too happily drawn, we cannot affirmatively fault the Board of Regents' construction that if the president decides at the end of five years that the teacher is not to receive tenure, in order to comply with the notice provision she is entitled to a further one year contract, but that is the end. Since this is what plaintiff received, the decision of the district court is

Affirmed.

8. Plaintiff's reliance on Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), might be appropriate if the president made no decision either way at the end of five years, but that is not this case.