# BOARD OF TRUSTEES OF THE STATE COLLEGES OF MARYLAND *v.* RUTH L. SHERMAN

[No. 6, September Term, 1977.]

*Decided June 3, 1977.*

374

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Glenn E. Bushel, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Robert H. Levan,* with whom were *Feissner, Garrity, Levan & Schimel* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that appellee, Ruth L. Sherman (Dr. Sherman), did not achieve tenure as a member of the faculty of Bowie State College. She sued the Board of Trustees of the State Colleges of Maryland (the Board) together with certain Bowie officials. The officials were sued individually as well as in their official capacities. The first count of her declaration sought a declaratory judgment. Although a number of items are mentioned, she basically sought a determination that "she was a tenured faculty member," and asked for a mandatory injunction directing her reinstatement. The second count was for breach of contract. The third count involved fraud and misrepresentation.

The trial judge granted Dr. Sherman's motion for summary judgment on the issue of tenure and enjoined the Board to reinstate her to her former position. He directed that the case "be set down for further hearing on the issue of monetary damages . . . ." The Board filed an immediate appeal to the Court of Special Appeals.[1] We granted the writ of certiorari prior to consideration of the case by that court.

---

1. An injunction such as that in this case is one of the class of interlocutory orders from which an appeal may be entered. *See* Code (1974) § 12-303 (c) (1) Courts and Judicial Proceedings Article.

The trial judge based his decision on a conclusion that Dr. Sherman entered the "tenure track" in 1970 and thus had attained tenure at the time of her dismissal as of June 30, 1974, by a notice given June 6, 1973. This presents the nub of this controversy. It is conceded that although three years service was required to acquire tenure at the time Dr. Sherman was hired, there had been an earlier five year provision at Bowie which possibly contributed to the confusion in this case.

On July 8, 1970, Dr. Sherman executed a form headed "APPLICATION FOR A / TEACHING POSITION," the "Non" having been inserted by someone above the title to the form. On July 14, 1970, she was hired for the school year beginning September 1, 1970. The contract provided in pertinent part:

> "2. **General Conditions Governing Academic Freedom and Tenure.**
>
> "The FACULTY MEMBER will enjoy the rights and be subject to the provisions of the Board's *Regulations and Procedures Governing Academic Freedom and Tenure* as the same may be amended from time to time. A current copy of these *Regulations and Procedures* has been furnished to the FACULTY MEMBER along with this contract and has been read by him prior to his affixing his signature thereto.
>
> * * *
>
> "4. **Additional Conditions.**
>
> "Assignment will be half-time in teaching and half-time in counseling during the academic year and full-time in counseling during the summer, excluding one month of leave."

The preamble to the "Regulations and Procedures Governing Academic Freedom and Tenure," to which reference is made in the contract, provides that "[t]he term 'faculty member' as used in th[o]se Regulations and Procedures shall mean persons appointed to *full-time teaching and/or faculty*

*research* positions at the State Colleges." (Emphasis added.) Article Two, Section One of those regulations provides in pertinent part:

"The Board recognizes that financial security is necessary to enable faculty members to render maximum service to the institutions where they are appointed. To establish such security, faculty members appointed for the academic year commencing September 1970 and thereafter shall attain permanent tenure at the college to which they are appointed in accordance with the following regulations:

1. The initial appointment shall be of a probationary nature, and shall be for a period extending to the end of the first academic year. Such probationary ·appointment shall be automatically renewable for additional periods of one full academic year each, unless the college president shall give written notice of the nonrenewal of appointment · for any succeeding academic year as follows:

   a. Not later than March 1 during the initial period of probationary appointment . . . .

   b. Not later than December 15 during the second year of probationary appointment.

   c. Thereafter, not later than at least twelve (12) months prior to the expiration of an appointment.

\* \* \*

4. In the case of an associate professor and a full professor, the total number of their annual probationary appointments (including the initial appointment even if

less than one year) shall not exceed three at that institution.

* * *

6. In every case, upon completion of the maximum number of probationary appointments, the faculty member shall attain permanent tenure. The Board may, in exceptional cases, decrease the length of the probationary period or, with the consent of the faculty member concerned, increase the length of the probationary period."

On March 3, 1971, Dr. Sherman addressed a letter to the president of Bowie in which she said she "would like to make formal application for the position as a professor in the graduate school program for the academic year 1971-1972." She added that if she were "accepted for such a position, [she] would relinquish [her] function as Director of the Counseling Center." This was followed on April 15, 1971, by what was styled "Addendum to Faculty Contract" between Dr. Sherman and the college by which she was hired as a professor for the "ten-month period, effective September 1, 1971." The addendum indicated that her "tenure status" would be "[p]robationary." It was on a prepared form which had "June 30, 1974," inserted after the statement, "Current regulations require that you be notified concerning the termination of your probationary period by . . . ." The similar date of "July 1, 1972," was inserted on the addendum dated April 11, 1972, in which her salary was agreed upon for the school year beginning September 1, 1972. The latter form had on it, "A condition of offering this addendum is that you submit a statement waiving rights to tenure before July 1, 1975." This was done under date of April 24, 1972. The April 11, 1972, addendum was accompanied by a letter from the college president saying in pertinent part:

"Technically, you were employed at Bowie State College under the old system that required five

years of service before attaining tenure; however, a new contract was issued to you which specified a period of three years of service as a requirement for attaining tenure.

"I am prepared to extend your contract for another year only if it does not lead to tenure. If you accept these conditions, please submit to me by May 1 a written statement waiving rights to tenure before June 30, 1975."

On April 16, 1973, the last addendum was executed. It pertained to employment for the college year beginning September 1, 1973. It, too, referred to her having probationary tenure status and said that regulations required that she be notified concerning the termination of her probationary period before June 30, 1974.

On June 6, 1973, the president of Bowie advised Dr. Sherman that it was his "unpleasant duty to inform [her] that [her] contract as a faculty member at Bowie State College" would be terminated "at the end of the [then] coming academic year, after which it w[ould] not be renewed." He added, "This means that you will no longer be employed at Bowie State College after June 30, 1974." The die was thus cast and the seeds of controversy sown.

This case is strikingly similar to that of *Sheppard v. West Virginia Board of Regents*, 516 F. 2d 826 (4th Cir. 1975). Regulations adopted there required that "[n]otice of nonreappointment or of intention not to recommend reappointment to the West Virginia Board of Regents, . . . be given in writing . . . [a]t least twelve months before the expiration of an appointment after two or more years in the institution." Probationary status applicable to the litigant there was for five years. These regulations were adopted subsequent to the hiring of the plaintiff. When she was hired the rule was, "[a]t the end of this period [(five years)] the president shall recommend to the governing board either that the probationary faculty member be placed on tenure or that his employment be discontinued at the end of the

contractual period. In the latter event, notice shall be given at least one year prior to the expiration of the probationary period." Plaintiff was hired for her fifth year. Three months before the expiration of that year she was notified that her contract would not be renewed for the ensuing academic year. Upon her petition to the Board of Regents she was offered reappointment for that ensuing year upon the basis of her not having been notified 12 months before the expiration of her appointment. She was told at that time that her contract would not be renewed after that year, which was her sixth. Judge Thomsen, sitting by special assignment, said for the court:

> "As we have seen, the 1968 regulation provided for a probationary period of 'at least five years' (rather than 'five years'), and did not explicitly require the president of the institution to make his decision whether to recommend tenure before the end of the fifth year. To accept plaintiff's contention would mean that the president must make his decision at the end of four years, when the regulation, whatever effect is given to the words 'at least', clearly provides for five years. Although, taken as a whole, the regulation is not too happily drawn, we cannot affirmatively fault the Board of Regents' construction that if the president decides at the end of five years that the teacher is not to receive tenure, in order to comply with the notice provision she is entitled to a further one year contract, but that is the end." *Id.* at 829-30.

For purposes of our decision here we shall assume, without deciding, that the references to notice in the tenure regulations are not concerned with employment status but with tenure. Thus the decision of Bowie State College as to whether a faculty member shall be granted tenure must be made not upon the basis of the experience of that member of the faculty as a teacher for the preceding three years but upon the basis of the experience over a period of two years. However, *see Kilcoyne v. Morgan,* 405 F. Supp. 828, 830

(E.D. N.C.), *aff'd*, 530 F. 2d 968 (4th Cir. 1975), *aff'd in part, vacated and remanded*, 535 F. 2d 1250 (4th Cir. 1976); *Assaf v. University of Texas System*, 399 F. Supp. 1245, 1249 (S.D. Tex. 1975); and *Rhine v. International Young Men's Christian Asso. College*, 339 Mass. 610, 162 N.E.2d 56 (1959), indicating possible bases for a contrary conclusion.

We see this as a case of contract construction, the principles of which are well known and have been enunciated by this Court numerous times: the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or intended it to mean; where a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed; and when the language of a contract is clear, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. *Billmyre v. Sacred Heart Hosp.*, 273 Md. 638, 642, 331 A. 2d 313 (1975), and cases there cited.

The trial judge erred in concluding that Dr. Sherman entered the "tenure track" when she was employed for the 1970-71 school year because the tenure regulations by their terms were not applicable to that employment, since she was not employed in a "full-time teaching and/or faculty research" position.

Under the tenure regulations a "probationary appointment [was to] be automatically renewable for additional periods of one full academic year each, unless the college president sh[ould] give written notice of the nonrenewal of appointment for any succeeding academic year" by certain specified dates, March 1 during the first year of probationary appointment as to employment for the second year, December 15 during the second year relative to the third year, and "not later than at least twelve (12) months prior to the expiration of an appointment" thereafter. Examining the record we see that for the first year of her *full-time* employment and, therefore, the first

year subject to the regulations, 1971-72, Dr. Sherman would be considered hired for the next "full academic year" (1972-73) unless she received notice before March 1, 1972. Her contract was actually dated April 11, 1972. In her second year (1972-73) she would be regarded as hired for the next "full academic year" (1973-74) unless she was given written notice before December 15, 1972. Her contract was actually dated April 16, 1973. By these regulations, having been hired for the year 1973-74 (her third year) she would be considered hired for the next succeeding year, 1974-75, unless written notice was given 12 months prior to the expiration of her appointment for that 1973-74 school year. That appointment would expire June 30, 1974. This meant that notice had to be given her before June 30, 1973. This notice actually was given on June 6, 1973. Accordingly, there was full compliance by the college and Dr. Sherman did not acquire tenure.

> *Judgment reversed and case remanded to the Circuit Court for Prince George's County for entry of a declaratory judgment conforming to this opinion; appellee to pay the costs.*