*The Brethren Mutual Insurance Company v. Ember Louise Buckley*, Case No. 10, September Term, 2013, Opinion by Adkins, J.

**INSURANCE LAW - SCOPE OF RELEASE - GENERAL RELEASE - MARYLAND CODE (1997, 2011 REPLACEMENT VOLUME), § 19-511(e) OF THE INSURANCE ARTICLE - NO PREJUDICE TO UNINSURED MOTORIST CLAIM:** The Court of Special Appeals correctly held that, under § 19-511(e) of the Insurance Article, a tort victim may execute a boilerplate, general release with a tortfeasor's liability insurer without prejudicing the tort victim's claim under her uninsured motorist policy.

Circuit Court for Baltimore County
Case No. 03-C-08-008799
Argued: November 5, 2013

IN THE COURT OF APPEALS

OF MARYLAND

No. 10

September Term, 2013

THE BRETHREN MUTUAL INSURANCE
COMPANY

v.

EMBER LOUISE BUCKLEY

Barbera, C.J.
Harrell
Greene
Adkins
Eldridge, John C., (Retired,
        Specially Assigned)
Cathell, Dale R., (Retired,
        Specially Assigned)
McAuliffe, John (Retired,
        Specially Assigned),

JJ.

Opinion by Adkins, J.

Filed: March 4, 2014

In this case we examine the scope of a general release executed pursuant to Md. Code (1997, 2011 Repl. Vol.), § 19-511 of the Insurance Article ("§ 19-511"). Petitioner, The Brethren Mutual Insurance Company ("Brethren"), appeals the decision of the Court of Special Appeals that a general release executed by its policy holder, Ember L. Buckley ("Buckley"), in favor of a tortfeasor's liability insurer did not likewise waive Buckley's claim under her uninsured motorist policy with Brethren.

## FACTS AND LEGAL PROCEEDINGS

Respondent, Buckley, was involved in a single-vehicle accident on March 18, 2007. Buckley was the front-seat passenger in a motor vehicle driven by her boyfriend, Harvey Betts ("Betts"). Betts was covered by a liability insurance policy issued by GEICO, with policy limits of $100,000. GEICO offered to settle Respondent's claim against Betts for the full policy limits. Notwithstanding this settlement, Buckley had medical bills related to this accident in excess of $200,000. Because the settlement with Betts did not cover the full extent of her injuries, Buckley sought coverage under her uninsured/underinsured motorist ("UM") policy with Petitioner, Brethren.

In order to comply with Maryland's UM scheme,[1] Respondent sent notice of the settlement offer from GEICO to Brethren via certified mail on August 29, 2007.[2] In

---

[1]Discussed *infra*.

[2]This letter stated:

> We represent [Buckley] who was injured in an automobile collision. Our office currently has an open file with Brethren

(continued...)

response, Brethren's claims adjuster stated in a letter dated October 30, 2007 that Brethren

would waive any subrogation action against Betts. Having received this message, Buckley

signed a full release of all claims against Harvey Betts and a hold harmless agreement in

favor of Betts and GEICO on December 6, 2007 ("the Release"). The Release stated that:

> I/we, **Ember Buckley** . . . for and in consideration of a draft for
> the sum of **one hundred thousand dollars** . . . do . . . hereby
> remise, release, and forever discharge **Harvey Betts**.
> Releasee(s), successors and assigns, and/or his, her or their
> associates, heirs, executors and administrators, and all other
> persons, firms or corporations of and from any and every claim,
> demand, right or cause of action, of whatever kind of nature, on
> account of or in any way growing out of any and all personal
> injuries and consequences thereof . . . resulting or to result from
> an accident that occurred on or about the **eighteenth** day of
> **March, 2007**, at or near **Saw Mill Court Baldwin, MD** . . . .

(Emphasis in original). After executing the Release with GEICO, Buckley attempted to

recover for the remainder of her outstanding medical bills from Brethren under her UM

policy. Brethren denied coverage and refused to pay.

---

[2](...continued)
Mutual for P.I.P. benefits (Claim # 343628).

> Enclosed please find a copy of correspondence dated August 8,
> 2007 which I have received from Geico [sic] Insurance
> Company, the liability carrier for the tortfeasor, Mr. Harvey
> Betts. They have offered their policy limits of $100,000.00 in
> settlement of this claim and are willing to settle the case
> accordingly if the tortfeasor, Mr. Harvey Betts, is released from
> liability and [subrogation]. This letter is a request that you
> permit this to occur pursuant to *Insurance Article, §19-511*.
> (Italics in original).

Buckley filed suit against Brethren in the Circuit Court for Baltimore County, alleging breach of contract and seeking the policy limit of $300,000 in compensatory damages, attorney's fees and interest. Brethren answered the complaint, asserting a general denial of liability, and raising the defenses of failure to state a claim, contributory negligence and assumption of the risk. Brethren did not raise the Release as an affirmative defense until its Amended Answer, filed two months after its initial Answer, and nearly three months after Buckley filed her complaint.

Both parties filed motions for summary judgment. Brethren argued that the Release, as written, was a general release, and thus released all persons, firms, and corporations from future claims, regardless of whether they were parties to the Release. Brethren further argued that Buckley's subjective intent in executing the Release was irrelevant—the words on the page should be interpreted exactly as written. Responding, Buckley contended that the Release only applied to Betts and his insurer, and that her execution of it was clearly in accordance with § 19-511. That statute reads, in pertinent part:

> **§ 19-511. Uninsured motorist coverage — Settlement procedures.**
>> (a) *Notice of settlement offer required.* — If an injured person receives a written offer from a motor vehicle insurance liability insurer . . . to settle a claim for bodily injury or death, and the amount of the settlement offer . . . would exhaust the bodily injury or death limits of the applicable liability insurance policies . . . the injured person shall send by certified mail, to any insurer that provides uninsured motorist coverage . . . a copy of the liability insurer's written settlement offer.

3

(b) *Response to settlement offer.* — Within 60 days after receipt of the notice . . . the uninsured motorist insurer shall send to the injured person:

> (1) written consent to acceptance of the settlement offer and to the execution of releases; or
>
> (2) written refusal to consent to acceptance of the settlement offer.

(c) *Payment of settlement offer.* — Within 30 days after a refusal to consent to acceptance of a settlement offer . . . the uninsured motorist insurer shall pay to the injured person the amount of the settlement offer.

(d) *Subrogation rights of uninsured motorist insurer.* —

> (1) Payment as described in subsection (c) of this section shall preserve the uninsured motorist insurer's subrogation rights against the liability insurer and its insured.
>
> (2) Receipt by the insured person of the payment described in subsection (c) of this section shall constitute the assignment, up to the amount of the payment, of any recovery on behalf of the injured person that is subsequently paid from the applicable liability insurance polic[y] . . . .

(e) *Acceptance of settlement offer.* — The injured person may accept the liability insurer's settlement offer and execute releases in favor of the liability insurer and its insured without prejudice to any claim the injured person may have against the uninsured motorist insurer:

> (1) on receipt of written consent to

> acceptance of the settlement offer and to the execution of releases; or (2) if the uninsured motorist insurer has not met the requirements of subsection (b) or subsection (c) of this section.

§ 19-511 of the Insurance Article. The Circuit Court agreed with Brethren and entered summary judgment in its favor, dismissing Buckley's breach of contract claims.[3]

Buckley appealed the Circuit Court's grant of summary judgment to Brethren. The Court of Special Appeals, applying the facts of this case to § 19-511, held that "in the context of § 19-511(e), executing a boilerplate, general release in favor of the liability insurer does not relieve the UM carrier from its contractual duty to issue a UM payment to its insured." *Buckley v. Brethren Mut. Ins. Co.*, 207 Md. App. 574, 587, 53 A.3d 456, 463 (2012). The court based its decision on three considerations, "(1) the text of the statute; (2) the purpose of the statute; and (3) matters of public policy." *Buckley*, 207 Md. App. at 587, 53 A.3d at 463–64.

---

[3] Along with this case, Buckley also pursued a complaint against Brethren with the Maryland Insurance Administration ("MIA") pursuant to Md. Code (2007, 2011 Repl. Vol.) § 27-1001 of the Insurance Article. The issue in the MIA proceeding was whether Brethren had acted with an absence of good faith in refusing to pay Buckley's UM claim. Finding that Brethren's argument that the Release must be read to release them from their obligation to pay Buckley was inconsistent with the plain language of § 19-511(e), the MIA found that Brethren had acted in the absence of good faith. Thus, the MIA ordered Petitioner to pay $246,250.00 to Buckley for its violations of § 27-1001. Brethren filed an appeal for judicial review of this MIA decision in the Circuit Court for Baltimore County. That appeal was stayed pending the result of the Court of Special Appeals case. *Buckley v. Brethren Mut. Ins. Co.*, 207 Md. App. 574, 583, n.5, 53 A.3d 456, 461, n.5 (2012).

Thus, the Court of Special Appeals held that the general release executed between Buckley and GEICO did not prejudice Buckley's claim against Brethren. Consequently, Brethren could not use the Release to relieve itself of its duty to pay under the UM policy owned by Buckley. *Buckley*, 207 Md. App. at 598, 53 A.3d at 470.

On Brethren's petition, we granted *certiorari* to consider the following question:

> Did the Court of Special Appeals err in ruling that the general release that Buckley executed did not prejudice her breach of contract claim against Brethren for benefits under her UM policy?[4]

Because we answer this question in the negative, we affirm the decision of the Court of Special Appeals.

**DISCUSSION**

---

[4]We rephrased Petitioner's question presented, which appeared in its brief as follows:

> Did the Court of Special Appeals err in ruling that Buckley's breach of contract claim against Brethren for UIM benefits was preserved, despite the fact that the parties and the Court of Special Appeals agreed that Buckley executed a release that, under its plain language, released all claims arising out of her automobile accident against "all persons, firms or corporations," where the unambiguous provisions of Md. Code Ann. Ins. §19-511(e), and the settlement procedures established thereunder, did not legislatively overrule controlling case law of this Court on the effect of such a global release?

Additionally, we highlight that this Court granted *certiorari* on the narrow question of the correctness of the interpretation of the Release by the Court of Special Appeals. The issue of Brethren's consent to Buckley's settlement with GEICO, although briefed by Respondent, is not presented for our review.

6

Under Maryland Rule 2-501(f), a trial court may grant summary judgment if "there is no dispute as to material fact and the moving party is entitled to judgment as a matter of law." *Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 598, 80 A.3d 269, 276 (2013). The court views the record in the light most favorable to the non-moving party, including any reasonable inferences that can be drawn against the moving party. *Mathews*, 435 Md. at 598, 80 A.3d at 276. Because no material facts are in dispute, we review the order granting summary judgment for legal correctness without "according any special deference to the circuit court's conclusions." *Mathews*, 435 Md. at 598, 80 A.3d at 277 (citation omitted).

Buckley argues that the Court of Special Appeals correctly held that § 19-511(e) and the public policy of the State of Maryland preclude Brethren from asserting the Release as a defense to her UM claim. Buckley points to the plain language of § 19-511(e), the purpose of §19-511 as evidenced by its legislative history, and the Maryland Insurance Administration's interpretation of § 19-511 to support her position that a release signed in accordance with § 19-511 cannot be read to release her UM insurer.

Brethren counters that Buckley signed a general release that, under its plain language, released all known claims against all persons or entities, even if those persons or entities were not aware of the Release and paid nothing for it. Brethren argues that the plain language of the Release should rule the day, the statutory protections and legislative purposes of § 19-511 notwithstanding. Additionally, Brethren alleges that Buckley cannot claim the

7

protection of § 19-511(e) because the Release went far beyond that permitted under § 19-511(e).

We are called upon to construe both the Release and the statute, and how they interact. We start our analysis by examining the nature of releases. Releases are contracts that should be interpreted according to the intent of the parties. *See Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 495–96, 872 A.2d 969, 985 (2005) ("[I]t is well settled that '[a] release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation.'" (quoting *Shriver v. Carlin & Fulton Co.*, 155 Md. 51, 64, 141 A. 434, 440 (1928))). Under the objective law of contract interpretation, courts are to interpret contracts based on "what a reasonable person in the position of the parties would have meant at the time it was effectuated." *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1995).

If the language of a contract is plain and unambiguous, we presume that the parties meant what they expressed. *See Bd. of Trustees v. Sherman*, 280 Md. 373, 380, 373 A.2d 626, 629 (1977). Previously, we have held that general releases, similar in language to that signed by Buckley, must be read to release even claims against parties who gave no consideration for, had no knowledge of, and were not parties to the contract. *See Pemrock, Inc. v. Essco Co.*, 252 Md. 374, 249 A.2d 711 (1969). We recognize the appeal of—and Brethren's zealous advocacy for—interpreting the Release according to these tenets of our "freedom of contract" jurisprudence. Indeed, these tenets have persuaded us in similar,

8

though not identical, factual settings. Brethren has argued that those cases should control our decision here. We now examine three of the leading decisions in this line of cases.

In the first case, *Bernstein v. Kapneck*, the parents of an infant injured in a car accident settled with an at-fault driver and her insurer by executing a general release with language similar to the one here.[5] 290 Md. 452, 454, 430 A.2d 602, 603–04 (1981). After signing the release, the injured child began suffering medical symptoms that had not been diagnosed or foreseen at the time that the release was executed. *Bernstein*, 290 Md. at 455, 430 A.2d at 604. This Court refused to set aside the release on the grounds of mutual mistake of fact. *Bernstein*, 290 Md. at 464, 430 A.2d at 609. We observed:

> [T]he release could not be more clear, more specific, more complete, more all-inclusive or more all-embracing. It would require turning the English language on its head to conclude that, from these words used, the releasors did not by this document exhibit a clear desire to extinguish the claim for the damages they now seek.

*Id*. (footnote omitted).

In the second case, Pemrock, Inc. hired Essco Co., Inc. to build poultry houses that were manufactured by Anderson Box Company, Inc. and later insured by New Castle Mutual Insurance. *Pemrock*, 252 Md. at 375–76, 249 A.2d at 712. The poultry houses later collapsed in a windstorm. *Id*. Pemrock sued New Castle, which then impleaded Essco and

---

[5]The relevant language stated: "and all other persons, firms or corporations liable for or who might claim to be liable, . . . from any and all claims, demands, damages, actions, causes of action, or suits of whatsoever kind or nature . . . ." *Bernstein v. Kapneck*, 290 Md. 452, 454–55, 430 A.2d 602, 604 (1981).

Anderson. *Pemrock*, 252 Md. at 376, 249 A.2d at 712. Pemrock then settled with New Castle, signing a general release similar to the one signed by Buckley.[6] *Pemrock*, 252 Md. at 376–77, 249 A.2d at 712. Essco and Anderson later moved for summary judgment based on the release, which the trial court granted and we affirmed. *Pemrock*, 252 Md. at 379–80, 249 A.2d at 714. We held that the release "in literal, plain, unambiguous words acquitted and discharged forever not only New Castle but all other persons. . . ." *Pemrock*, 252 Md. at 380, 249 A.2d at 714.

In the third case, *Peters v. Butler*, a woman drove a car into a brick wall of an apartment complex, near where her mother was standing. 253 Md. 7, 8, 251 A.2d 600, 601 (1969). The brick wall subsequently collapsed, injuring the mother's leg. *Id*. The mother settled with the automobile insurer, Nationwide Mutual Insurance Company, and the driver's insurer, American Mutual Insurance Company of Boston, executing a release of not only the driver, but "'all other persons, firms or corporations liable or who might be claimed to be liable . . . on account of all injuries, known and unknown[.]'" *Peters*, 253 Md. at 9, 251 A.2d at 601. The mother later attempted to sue the apartment complex, but the defendant pleaded the release and moved for summary judgment. *Id*. When the mother moved to reform the release, the circuit court denied relief. *Peters*, 253 Md. at 8–9, 251 A.2d at 601. On appeal, this Court rejected the mother's contention that because the apartment complex paid nothing

---

[6]The relevant language stated: "and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages . . . ." *Pemrock, Inc. v. Essco Co.*, 252 Md. 374, 376–77, 249 A.2d 711, 712 (1969).

for the release, and was not expressly named, it was not released from the mother's claim. *Peters*, 253 Md. at 9–10, 251 A.2d at 602.

Brethren, relying on this line of cases, urges us to hold that general releases must *invariably* be read to release all claims against all parties, regardless of whether the released parties were contemplated, parties to, or paid consideration for the release. To be sure, applying this principle to the Release would render this a straightforward case. But other strands of our jurisprudence, glossed over by Brethren, preclude such tidy dispatch of this dispute.

The most significant hurdle is posed by *Bernstein* itself. In that case, we did not announce a blanket rule that general releases would always be given the full effect that the language would allow. *Bernstein*, 290 Md. at 459, 430 A.2d at 606. Instead, we stated that "**in the absence of constitutional, statutory or clear important policy barriers,** parties are privileged to make their own agreement and thus designate the extent of the peace being purchased[.]" *Id*. (Emphasis added). In this case, such statutory and public policy barriers exist.

First, we will address why § 19-511 acts as an applicable statutory barrier. We have long held that "parties to a contract are presumed to contract mindful of the existing law and that all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident." *Wright v. Commercial and Sav. Bank*, 297 Md. 148, 153, 464 A.2d 1080, 1083 (1983) (citations

11

omitted).

The world of insurance is not immune from this doctrine. In *Federal Insurance Company v. Allstate Insurance Company*, Max Schwartz contracted with Direct Way, a carrier authorized by the Interstate Commerce Commission ("ICC"), to transport his vehicle from Brooklyn, New York to Florida. 275 Md. 460, 462–63, 341 A.2d 399, 402 (1975). The transaction was memorialized by a bill of lading, through which Schwartz consented to have "'the driver . . . transport persons authorized by the carrier, but not for hire.'" *Fed. Ins. Co.*, 275 Md. at 463, 341 A.2d at 402. Outside of this phrase, the bill of lading made no reference to vehicle occupants besides the driver. *Id*. Direct Way's driver then picked up two passengers on his way to Florida, one of which took the wheel before engaging in a four-car collision that generated "a bevy of personal injury claims." *Fed. Ins. Co.*, 275 Md. at 464–65, 341 A.2d at 403. Federal Insurance Company ("Federal"), Schwartz's automobile insurer, moved for declaratory judgment as to its liability to the vehicle passengers. *Fed. Ins. Co.*, 275 Md. at 468, 341 A.2d at 404. In response, one of the injured claimants filed a motion for summary judgment, and the trial court ruled that Federal must extend the claimant coverage. *Id*.

On appeal, this Court observed that the Federal policy only provided coverage to persons using the vehicle "'with the permission of the named insured.'" *Fed. Ins. Co.*, 275 Md. at 473, 341 A.2d at 407. To interpret the scope of the permission granted by Schwartz, we read ICC regulations into the bill of lading, which narrowed the authorization that

12

Schwartz provided **solely** to the driver authorized by Direct Way. *Fed. Ins. Co.*, 275 Md. at 475, 341 A.2d at 408 ("[W]hile it is true that Schwartz granted Direct Way . . . authority to subdelegate the driving to an authorized driver, the scope of this authority must be considered in light of the I.C.C. regulations cited above."). Consequently, coverage under the Federal policy applied only to Schwartz, the named insured. *Fed. Ins. Co.*, 275 Md. at 476, 341 A.2d at 409.

Here, § 19-511 constitutes existing law that must be read into the Release. *See Prince George's Country Club, Inc. v. Edward R. Carr, Inc.*, 235 Md. 591, 607, 202 A.2d 354, 362 (1964) ("'[S]ubsisting laws enter into and form part of a contract as if expressly referred to or incorporated in its terms, and [this] rule embraces alike those provisions which affect its validity, construction, discharge, and enforcement.'" (quoting *Holmes v. Sharretts*, 228 Md. 358, 367, 180 A.2d 302, 306 (1962))); *cf.* 3 Arthur L. Corbin, Corbin on Contracts § 551 (1960) ("[W]ords and other symbols must be interpreted in the light of the surrounding circumstances; and the existing statutes and rules of law are among those circumstances.") (footnote omitted). Section 19-511, like the ICC regulations in *Fed. Ins. Co.*, existed at the time that Buckley signed the Release. Section 19-511 applies to Brethren as an insurer, just as the ICC regulations applied to Direct Way as a carrier. *See* Md. Code (1997, 2011 Repl. Vol.), § 19-503(b) of the Insurance Article ("The Commissioner may review any motor vehicle liability insurance policy issued, sold, or delivered in the State to determine whether it complies with this subtitle and regulations adopted under this subtitle.").

13

We do not consider reading § 19-511 into the Release to be unfair to Brethren, especially because § 19-511 was specifically referenced in the letter seeking Brethren's consent to the Release. In *Prince George's Country Club, Inc.*, we charged a realtor having 26 years of experience with knowledge of the statutory requirements required for a proper sale. 235 Md. at 607–08, 202 A.2d at 362–63. Brethren, as an insurance company, is undoubtedly aware of § 19-511, and the release procedures set forth by § 19-511(e). Thus, Brethren is chargeable with knowledge of the statute, and that the Release was executed pursuant to that statute.

We must now determine **how** § 19-511 should be read into the Release—*i.e.*, its effect on the Release. When interpreting a statute, we strive to "ascertain and effectuate the intent of the Legislature." *Mayor and Town Council of Oakland v. Mayor and Town Council of Mountain Lake Park*, 392 Md. 301, 316, 896 A. 2d 1036, 1045 (2006). We ascertain legislative intent according to the following procedure:

> [I]n attempting to divine legislative intent, we look first to the words of the statute, "but if the true legislative intent cannot readily be determined from the statutory language alone, we look to other indicia of that intent, including the title of the bill, the structure of the statute, the inter-relationship of its various provisions, its legislative history, its general purpose, and the relative rationality and legal effect of various competing constructions."

*State v. Sharafeldin,* 382 Md. 129, 138, 854 A.2d 1208, 1212–13 (2004) (quoting *Baltimore Cnty. v. RTKL Associates*, 380 Md. 670, 678, 846 A.2d 433, 437–38 (2004)).

Section 19-511(e) states that an injured person "may . . . execute releases in favor of

14

the liability insurer and its insured **without prejudice to any claim the injured person may have against the uninsured motorist insurer**[.]**"**  (Emphasis added.)  Brethren does not dispute that under this language, Buckley could have executed a release of GEICO and Betts while preserving its claim against Brethren.  Instead, Brethren argues that the language of § 19-511(e) requires an injured person to execute a narrow release, solely in favor of the liability insurer.

On its face, the statute's language does not explicitly address the scope of the release that may be executed by the insured.  Nor does the statutory language suggest that, in saying the injured party may execute a release in favor of the liability insurer and its insured, any limitation on the word "release" is intended.  We are hard-pressed to find in the language of the statute any intent to require that, in order to fall within the ambit of § 19-511(e), the release executed must be something other than a broad, general release.

We have previously stated that "[t]he purpose of the uninsured motorist statute is to provide minimum protection for individuals injured by uninsured motorists and should be liberally construed to ensure that innocent victims of motor vehicle collisions are compensated for their injuries."  *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 612, 925 A.2d 636, 644 (2007); *see also Arrow Cab v. Himelstein*, 348 Md. 558, 565, 705 A.2d 294, 297 (1998) ("[T]he legislative 'purpose behind adopting motor vehicle regulations that require insurance on vehicles is to promote the established legislative policy in Maryland that seeks to assure that victims of automobile accidents have a guaranteed avenue of financial

15

redress.'" (quoting *Rentals Unlimited, Inc. v. Aetna Cas. & Sur. Ins. Co.*, 101 Md. App. 652, 660, 647 A.2d 1278, 1282 (1994))).  In particular, § 19-511 was passed "to provide 'a remedy [for] a problem that [had] existed in Maryland's tort system for some time.'" *See Keeney v. Allstate Ins. Co.*, 130 Md. App. 396, 401, 746 A.2d 947, 950 (2000) (quoting the Senate Floor Report for Senate Bill 253 of the 1995 Legislative Session).  In short:

> [A]n injured person who [made] a claim against a liability carrier for limits available under the liability policy [wa]s frequently not allowed by their uninsured/underinsured motorist carrier to give the liability carrier a full release of their claim.  Therefore, if the injured person wishe[d] to make an additional claim for their injuries against their underinsured motorist coverage, they g[o]t caught in a situation where the liability carrier w[ould] not give them the limits of the at-fault party's policy without a release and the uninsured/underinsured motorist carrier w[ould] not allow them to give a release to the liability carrier.  As a result, they [we]re unable to recover funds from either carrier.  This dilemma c[ould] cause a lengthy delay in settlement.

*Id*.  The purpose, evident in the Senate Floor Report, is confirmed by the Summary of Senate Bill 253 of the 1995 Legislative Session, which states that the bill **"establishes a settlement procedure to be followed** when a claimant is injured by a party whose liability insurance limit is less than the claimant's uninsured motorist limits." (Emphasis added.)

We cannot, consistent with the legislative intent of § 19-511, interpret the Release as releasing Brethren from responsibility under Buckley's UM policy.  Section 19-511(e) sets forth a settlement procedure to be followed by claimants.  That procedure allows claimants to circumvent the dilemma described above, and execute a settlement with the tortfeasor's

16

insurance company without prejudicing the injured person's claim against her own UM policy. This procedure was enacted in the context of a broader statutory goal to enable recovery for injured victims. These legislative purposes would be turned on their head if we interpreted the Release as terminating her right to claim under her policy with Brethren.

Our interpretation of the Release is also supported by the maxim that we always strive to interpret contracts in accordance with common sense. *See Fister ex rel. Estate of Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 219, 783 A.2d 194, 205 (2001). To hold that Buckley intended to waive her claim against Brethren would defy common sense. Section 19-511(e) sets forth a procedure to speed up the settlement process, and enables Buckley to collect from both the liability insurer and the UM insurer. For Buckley to settle with GEICO for an amount less than her medical expenses, **and** release Brethren from the coverage she was entitled to would be economically illogical.

Our interpretation is also aligned with the one used by the MIA in related proceedings. The MIA, when considering Brethren's denial of the claim, held that when a release is executed within the statutory framework of § 19-511, the statute should define the permissible scope of the release as to the UM insurer. "Although never binding upon the courts, the contemporaneous interpretation of a statute by the agency charged with its administration is entitled to great deference, especially when the interpretation has been applied consistently and for a long period of time." *Baltimore Gas and Elec. Co. v. Public Service Comm'n of Maryland*, 305 Md. 145, 161, 501 A.2d 1307, 1315 (1986) (citations

17

omitted).

In conclusion, the Court of Special Appeals correctly held that the Release did not waive Buckley's uninsured motorist claim against Brethren. The broad, all-inclusive language of the Release must be read with an eye towards the parties' overall intent, which encompasses the legislative purposes embodied in § 19-511. That reading persuades us to cabin the scope of the Release to include GEICO and Betts, not Brethren. As explained above, the issue of Brethren's consent to Buckley's settlement with GEICO is not properly before this Court, and we decline to address it.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY PETITIONER.**