795 A.2d 216

**PHILLIPS WAY, INC.**

v.

**AMERICAN EQUITY INSURANCE COMPANY.**

No. 594, Sept. Term, 2001.

Court of Special Appeals of Maryland.

April 2, 2002.

William M. Huddles and Kenneth K. Sorteberg (Huddles & Jones, P.C. on the brief), Columbia, for appellant.

James W. Bartlett, III (Scott M. Trager and Semmes, Bowen & Semmes on the brief), Baltimore, for appellee.

Argued Before MURPHY, C.J., SALMON, JOHN J. BISHOP, JR. (Ret., Specially Assigned), JJ.

SALMON, Judge.

The dispute that we must resolve arises out of a professional liability insurance policy that contains a "no-action" clause. The clause reads as follows:

ACTION AGAINST COMPANY

No action shall be maintained against the Company by the Insured to recover for any loss under this Insurance Policy unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms and conditions of this Insurance Policy, nor until the amount of such loss has been fixed or rendered certain by either final judgment against the Insured after trial of the issues and the time to appeal therefrom has expired without an appeal having been taken, or, if an appeal has been taken, then after the appeal has been determined or *by agreement between the parties with the written consent of the Company.*

(Emphasis added.)

Appellant, Phillips Way, Inc., settled a claim made against it by a third party but did so without the knowledge or consent of its insurer, American Equity Insurance Company ("American Equity"). On April 21, 2000, Phillips Way filed suit in the Circuit Court for Baltimore County to enforce the insurance policy. Suit was filed even though no loss under the policy had been "fixed or rendered certain by either a final judgment" against Phillips Way or "by agreement ... [made] with the written consent" of American Equity. Relying, *inter alia,* on the no-action clause, American Equity filed a motion for summary judgment, in which it asserted that the condition precedent to suit set forth in the "no-action" clause had not

been fulfilled. Phillips Way acknowledged that it had failed to comply with the condition precedent but contended that this fact was unimportant because American Equity had not been prejudiced by its breach of the no-action clause. The motions court rejected this argument and granted summary judgment in favor of American Equity.

On appeal, Phillips Way's primary argument is that summary judgment should not have been granted against it because the provisions of the no-action clause must be read in tandem with section 19–110 of the Insurance article of the Maryland Code (1997). It argues that a material dispute of fact exists as to whether American Equity had been prejudiced by Phillips Way's settlement of the claim with the third party. And, according to Phillips Way, section 19–110 requires that prejudice be shown before an insurer can rely on a defense such as the one contained in the no-action clause.

## I. *BACKGROUND FACTS*

The facts set forth below are undisputed for purposes of this appeal.

On September 30, 1997, the University of Maryland at College Park ("UMCP") issued a request for proposal ("RFP") for the design and construction of a golf clubhouse to be erected on the University's College Park campus ("the project"). Phillips Way, in response to the RFP, submitted a detailed proposal in November 1997. UMCP accepted that proposal. The parties thereafter entered into a contract whereby Phillips Way agreed to both design and construct the clubhouse. UMCP agreed to pay Phillips Way $2,165,800 for its contractual services.

Phillips Way began construction in December 1997. During the course of construction, there were numerous instances where the work deviated from that called for in the project documents. A significant number of the problems were due to the fact that the architectural design was defective. Additionally, there were defects in the structural design. Under the contract, Phillips Way was responsible for all design defects.

When these architectural and structural design defects were brought to the attention of Phillips Way, the latter, without notifying American Equity, corrected them. The cost for resolving the problems was $260,000. After the corrections were made and after the project had been accepted by UMCP, Phillips Way made a $260,000 claim under its professional liability policy against American Equity.

The policy was a "claims-made" policy. Phillips Way's claim was made on June 11, 1999, which was within the policy period.

After receipt of the claim, American Equity sent a "reservation of rights" letter to Phillips Way. Thereafter, American Equity did some preliminary investigation of the claim but, by April 2000, had still not told Phillips Way whether the claim would be paid. Accordingly, on April 24, 2000, Phillips Way filed suit in an effort to enforce the insurance contract.

## II.  *ANALYSIS*

Phillips Way, in its reply brief, clearly sets forth its position in this appeal:

American Equity argues point-blank that "prejudice to American Equity is *irrelevant*," because § 19–110 of the Insurance [a]rticle does not apply to Condition V [the "no action clause"]. . . . This issue may be the crux of this case. *If § 19–110 does not apply, then American Equity wins.* If it does apply, then this case must be remanded for a trial on the issue of prejudice, among other things.

American Equity and Phillips Way both agree that the pivotal language of Condition V is the last phrase which fixes the loss "by agreement between the parties [*i.e.*, Phillips Way and the Owner] with the written consent of the Company [*i.e.*, American Equity]." Obtaining American Equity's consent naturally requires Phillips Way to notify American Equity of a pending agreement with the Owner and to cooperate by giving American Equity an opportunity

to decide whether to consent thereto. Therefore, § 19–110 must apply.

(Emphasis added.)

██  Section 19–110 of the Insurance Code reads as follows: An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

The appellant's argument, while ingenious, is unpersuasive. First of all, it is not technically true that to obtain American Equity's consent to the settlement, Phillips Way would have had to notify the insurer of the pending settlement—such notification could have been made by UMCP or even by an officious intermeddler. But even if it were technically true that in order for American Equity to give its consent to the intended settlement, Phillips Way would have had to notify and cooperate with its insurer, that fact is irrelevant. If Phillips Way *had* notified American Equity of the intended settlement and gave the latter its full cooperation, the condition precedent would still have been breached if American Equity failed to give its written consent to that settlement.

The early legislative history of article 48A, section 482, which was later codified as section 19–110, is discussed in *GEICO v. Harvey*, 278 Md. 548, 366 A.2d 13 (1976). The Court said:

As originally introduced before the General Assembly, § 482 provided that an insurance company was required to prove actual prejudice in an action under a motor vehicle liability insurance policy where it filed a disclaimer of insurance for "any reason." *The words "any reason" were deleted from the bill prior to final passage.* As amended and ultimately enacted, § 482 required insurance companies to prove actual prejudice only where the disclaimer was

based on the insured's failure "to cooperate with the insurer or by not giving requisite notice to the insurer."

*Id.* at 552, 366 A.2d 13 (emphasis added).

In 1966, article 48A, section 482 was broadened to encompass *any* policy of liability insurance. *See Sherwood Brands, Inc. v. Hartford Accident and Indemnity Company*, 347 Md. 32, 41, 698 A.2d 1078 (1997). Since 1966, the statute has not been changed in any substantive way prior or subsequent to its recodification [effective October 1, 1997] as section 19–110 of the Insurance article. *Id.*

Phillips Way reads section 19–110 so as to make it applicable to any defense raised by the insurer. But, as noted in *GEICO v. Harvey, supra*, that approach was specifically rejected by the General Assembly in 1964 when it drafted the predecessor to section 19–110. *GEICO*, 278 Md. at 552, 366 A.2d 13. That an insurer must show prejudice only if it raises a failure to cooperate defense or a defense based on lack of notice is demonstrated by the *GEICO* case. In *GEICO*, Harvey was insured under a policy that contained a personal injury protection ("PIP") endorsement. *Id.* at 550, 366 A.2d 13. The PIP endorsement included the following condition:

Medical Reports (Proof of claim). As soon as practicable, within a period not to exceed 6 months after the date of the accident, the injured person . . . shall submit to the Company written proof of claim including full particulars of the nature and extent of the injuries and treatment received and contemplated . . . .

*Id.*

Harvey was injured in an automobile accident but failed to file a proof of loss within six months of the date of the accident. *Id.* at 551, 366 A.2d 13. When Harvey later filed a PIP claim against GEICO, the insurer defended on the basis that the proof of loss had not been timely filed. *Id.* Harvey admitted that the proof of loss was late but maintained that GEICO could not successfully defend on that basis because no prejudice had been shown pursuant to section 482 of article 48A. *Id.* at 551–52, 366 A.2d 13. The trial court agreed with

the insured and entered judgment against GEICO. *Id.* at 552, 366 A.2d 13. The Court of Appeals reversed, saying:

We think it clear from the history and language of § 482 that its provisions do not apply to insurance disclaimers grounded on the insured's failure to submit proof of loss within the time specified in the policy. That a proof of loss or claim is separate and distinct from a notice of accident is well recognized. A proof of loss enables the insurer to ascertain the nature, extent and character of the loss and to set reserves accordingly. *Empire State Ins. Co. v. Guerriero,* 193 Md. 506, 69 A.2d 259 (1949). The chief purpose of a proof of loss "is to acquaint the insurance company with certain facts and circumstances relative to the loss, forming a basis for further steps to be taken by the company, ranging from full settlement to absolute repudiation of liability." *Fire Ins. Co. v. Merrick,* 171 Md. 476, 489, 190 A. 335 (1937). The insurer's right to a proof of loss, where required by the policy, has been characterized as "an important one to the insurer, and one in which it is to be protected." *Automobile Ins. Co. v. Thomas,* 153 Md. 253, 261, 138 A. 33 (1927). *See also* Appleman, *Insurance Law and Practice* § 3481, *et seq.* (1970); 8 Blashfield, *Automobile Law and Practice* § 331.5 (1966). GEICO's policy issued to the appellee in this case clearly distinguished between the required notice of an accident and the proof of claim; the provisions with respect to each were contained in separate paragraphs in the policy under the heading "Conditions."

*Id.* at 553, 366 A.2d 13.

As in *GEICO,* here the requirements for notice of claim [1] and the separate requirement for cooperation with the insur-

---

1. The notice of claim provision in American Equity's policy is as follows:

   The Insured, upon notice of any claim or of an incident or circumstance likely to give rise to a claim hereunder, shall give immediate written advice thereof to the Company, c/o Professional Underwriters Agency, Inc., 2907 Butterfield Road, Suite 320, Oak Brook, Illinois 60521.

er,[2] are contained in separate paragraphs from the "no-action" clause.

Vol. 7, Couch On Insurance (3d ed.1997), chapter 105 (hereafter "Couch"), is devoted to the subject of "no-action" clauses. Couch says:

In view of the fact that a claim against an insured may be determined by a non-judicial method, or by settlement, no-action clauses are commonly expanded to include, as a prerequisite to an action against the insurer, either a final judgment or a written agreement between the claimant, the insured, and the insurer. In harmony with the conclusion reached in construing the ordinary no-action clause, there can be no recovery under such a broader form in the absence of a judgment or agreement. *This means that the amount of liability, as well as the issue of liability, must both have been determined.*

Couch, 105–29 (footnotes omitted) (emphasis added).

In appellee's brief, numerous cases are cited that support the emphasized portion of the excerpt from Couch. *See Willett's Plumbing Company v. Northwestern National Cas. Company,* 261 Ark. 447, 548 S.W.2d 830 (1977); *Coil Anodizers, Inc. v. Wolverine Insurance Company,* 120 Mich.App. 118, 327 N.W.2d 416 (1982); *Giffels v. The Home Insurance Company,* 19 Mich.App. 146, 172 N.W.2d 540 (1969); *Wichman v. Aetna Cas. and Surety Company,* 412 S.W.2d 528 (Mo.Ct.App. 1967); *Merchants Mutual Insurance Company v. Transform-*

---

**2.** INSURED'S DUTIES IN THE EVENT OF CLAIM: It is a condition precedent to the application of all insurance afforded herein that the insured shall:

\* \* \*

(c) Cooperate with the Company and upon the Company's request, shall submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives and meetings with such representatives for the purpose of investigation and/or defense, and all without charge to the Company.

er Service, Inc., 112 N.H. 360, 298 A.2d 112 (1972); *Kielb v. Couch*, 149 N.J.Super. 522, 374 A.2d 79 (Law Div.1977); *M & M Electric, Inc. v. Commercial Union Insurance Company*, 241 A.D.2d 58, 670 N.Y.S.2d 909 (1998); *Terrell v. Lawyers Mutual Liability Insurance Company*, 131 N.C.App. 655, 507 S.E.2d 923 (1998); *Jones Masonry Inc. v. The West Am. Ins. Co.*, 768 S.W.2d 686 (Tenn.Ct.App.1988). Phillips Way cites no case from any jurisdiction having statutes similar to section 19 110 that have held that prejudice must be shown by the insurer in order to rely on a no-action clause.

From the perspective of the insurer, one of the main purposes of a no-action clause is to protect it "from collusive or overly generous or unnecessary settlements by the insured at the expense of the insurer." Couch, § 105.7, p. 105–13. That last-mentioned purpose would be difficult to accomplish if an insured could disregard the no-action clause, sue its insurer, and put the nearly impossible burden on the latter of showing collusion or demonstrating, after the fact, the true worth of the settled claim.

■ For the foregoing reasons, we hold that section 19–110 of the Insurance article is inapplicable when an insurer defends on the basis that its insured failed to meet the condition precedent set forth in a no-action clause—such as the one set forth in Condition V in American Equity's policy.

■ Appellant, in the alternative, argues that, even assuming that section 19–110 is inapplicable, American Equity is estopped from reliance on the no-action clause by virtue of its dilatory response to its claim. Phillips Way points out that approximately ten months went by from the time that it filed its claim against American Equity until suit was filed. During that time period, American Equity never gave Phillips Way a definitive answer as to whether there would be coverage. Instead, American Equity simply sent Phillips Way a reservation-of-rights letter and thereafter did nothing other than to meet with Phillips Way's agents on one occasion.

As appellant points out, an insurer, under some circumstances, may be estopped from asserting the viability of a no-action clause. *See, e.g., Nationwide Mutual Insurance Company v. Regional Electric Contractors, Inc.,* 111 Md.App. 80, 92–94, 680 A.2d 547 (1996). But, as pointed out in the *Nationwide* case, in order for the doctrine of estoppel to bar an insurer from raising a defense, the insured must produce evidence of some "prejudicial reliance" upon "some act, conduct, or non-action of the insurer." *Id.* (citing *Beard v. American Agency Life Insurance Company,* 314 Md. 235, 258, 550 A.2d 677 (1988)). In the lower court, appellant produced no evidence that it had prejudicially relied on any inaction, action, or conduct of its insurer. Accordingly, principles of estoppel are inapplicable.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**