REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND


No. 532

September Term, 2013

---

JESSICA N. WOZNICKI

v.

GEICO GENERAL INSURANCE CO.

---


Matricciani,
Kehoe,
Berger,


JJ.

---

Opinion by Kehoe, J.

---


Filed: April 29, 2014

Appellant, Jessica N. Woznicki, concedes that her lawyer failed to comply with a notice requirement in her automobile liability policy. She asserts, however, that her insurer, appellee, GEICO General Insurance Company, waived compliance or, alternatively, that the law does not permit an insurance company to deny coverage in cases like hers unless it can show prejudice. Reasoning that the record before it did not establish disputes of material fact as to waiver and that GEICO was otherwise entitled to judgment, the Circuit Court for Cecil County granted the insurer's motion for summary judgment. Ms. Woznicki has appealed, arguing that the circuit court was incorrect on both scores. We think the circuit court was correct and will affirm its judgment.

## Background

On November 12, 2010, Ms. Woznicki was injured in an automobile accident in Cecil County, Maryland. The other driver, James B. Houston, was at fault.

Houston was insured by a liability policy issued by Nationwide Insurance Company, with policy limits of $20,000. Ms. Woznicki was covered by an insurance policy issued by GEICO. Section IV of the GEICO policy provided her with uninsured/underinsured motorist ("UM/UIM") benefits in the amount of $300,000, subject to certain exclusions.[1] In relevant part, the GEICO policy stated (emphasis in original):

---

[1]For a concise review of the statutory evolution of uninsured/underinsured motorist coverage in Maryland, see the opinion of this Court in *Connors v. Government Employees Insurance Company*, ___ Md. App. ___, No. 773, slip op. at 5-7 (filed March 25, 2014).

Section IV does not apply:

1.      To ***bodily injury*** to an ***insured*** if the insured or his legal representative has made a settlement of his claim which exhausts the applicable ***bodily injury*** or death limits of the liability insurance without our prior written consent unless:

>      (a)      We are notified in writing by Certified Mail that a tentative agreement to settle for the liability limits of the owner or operator of the other vehicle has been reached;
>      (b)      We did not make a payment equal to the tentative settlement amount to our insured within 30 days of our refusal to consent to the settlement offer; and
>      (c)      We responded to the written notice of settlement within 60 days.

(We will refer to this provision as the "Consent to Settle Clause.") The Consent to Settle Clause tracks Md. Code Ann. (2011) § 19-511 of the Insurance Article,[2] which provides in pertinent part:

> **Uninsured motorist coverage—Settlement procedures.**
>
> (a) *Notice of settlement offer required.* – If an injured person receives a written offer from a motor vehicle insurance liability insurer . . . to settle a claim for bodily injury . . . , and the amount of the settlement offer . . . would exhaust the bodily injury . . . limits of the applicable liability insurance policies . . . , the injured person shall send by certified mail, to any insurer that provides uninsured motorist coverage for the bodily injury . . . , a copy of the liability insurer's written settlement offer.
>
> (b) *Response to settlement offer.* – Within 60 days after receipt of the notice required under subsection (a) of this section, the uninsured motorist insurer shall send the injured person:
>> (1) written consent to acceptance of the settlement offer and to the execution of the releases; or

---

[2]Unless otherwise noted, all statutory references in this opinion are to the Insurance Article.

(2) written refusal to consent to acceptance of the settlement offer.

(c) *Payment of settlement offer*. – Within 30 days after a refusal to consent to acceptance of a settlement offer . . . , the uninsured motorist insurer shall pay to the injured person the amount of the settlement offer.

(d) *Subrogation rights of uninsured motorist insurer*. – (1) Payment as described in subsection (c) of this section shall preserve the uninsured motorist insurer's subrogation rights against the liability insurer and its insured.

* * * *

(e) *Acceptance of settlement offer*. – The injured person may accept the liability insurer's settlement offer and execute releases in favor of the liability insurer and its insured without prejudice to any claim the injured person may have against the uninsured motorist insurer:
>  (1) on receipt of written consent to acceptance of the settlement offer and to the execution of releases; or
>  (2) if the uninsured motorist insurer has not met the requirements of subsection (b) or subsection (c) of this section.[3]

Ms. Woznicki notified GEICO that she had been injured in an accident. Her claim was assigned to Rebecca Davis, a GEICO adjuster. Ms. Woznicki retained a Delaware attorney, Ben T. Castle, Esquire, to represent her. At some point in March, 2011, Nationwide offered to settle all of Ms. Woznicki's claims against Houston for $20,000, that is, its policy limits, in return for a release for Houston and Nationwide. Castle agreed, at least in principle. On March 29, 2011, Nationwide sent a letter to Castle enclosing a release that "confirms our settlement with you/your client[]"and requesting that it be signed by Ms. Woznicki, witnessed, and returned. The record does not show that Castle discussed a

---

[3]Section 19-511 was amended effective October 1, 2012. *See* 2012 Md. Laws, Chaps. 268 and 269. The substance of the amendment is not relevant to the matter before us.

3

possible settlement with GEICO before reaching the agreement with Nationwide.

On the same day that Nationwide sent Castle the release, he wrote to Davis, the GEICO adjuster, stating:

> At this time it appears that the driver of the car that caused the accident injuring Ms. Woznicki, James Houston, has only limited liability coverage through Nationwide Insurance Company. We will provide more information as it becomes available.

This letter did not mention a settlement with Nationwide. At this point, the exact sequence of events becomes unclear.

On or a few days before July 7, 2011—our only source of information is his deposition which is a bit vague on the point—Castle contacted GEICO by telephone and received what Ms. Woznicki asserts was GEICO's consent to settle her claim against Houston without prejudice to her right to pursue a UIM claim against GEICO. We will discuss what we know about this conversation later in the opinion. On July 7, 2011, Ms. Woznicki signed the release and, on the same day, Castle wrote to Davis stating:

> The tortfeasor's insurance carrier, Nationwide, has a limited bodily injury liability policy of $20,000 and has tendered those limits to the injured driver, Jessica Woznicki. We are writing to request GEICO's consent to acceptance of the settlement.
>
> Enclosed for your file is a copy of the Nationwide Policy insuring tortfeasor, James B. Houston, and the Release in exchange for the $20,000.

At some point thereafter—again, the chronology is unclear from the record—Castle sent the signed release back to Nationwide.

On August 15, 2011, GEICO wrote Castle, denying UIM coverage to Ms. Woznicki

based on what it asserted was her breach of the Consent to Settle Clause and § 19-511 "because you failed to obtain our consent to settle, which is required by both the statute and the policy contract."

On April 3, 2012, Ms. Woznicki, represented by new counsel, filed a complaint for breach of contract against GEICO seeking reimbursement of her damages in excess of the $20,000 that she received from Nationwide. GEICO filed its answer and later filed a motion for summary judgment. GEICO asserted that there were no disputes of material fact and that summary judgment was appropriate because Ms. Woznicki was precluded from receiving UIM benefits because she had settled with Nationwide without giving GEICO the opportunity to either consent to or refuse acceptance of the settlement.

Ms. Woznicki opposed the motion. She presented essentially the same arguments as she now presents to this Court, which we will discuss in detail later.

On April 5, 2013, after a hearing, the court granted summary judgment in favor of GEICO, stating:

> It's clear and undisputed that Section 19-511 was not complied with. In other words, there is – the plaintiff's attorney did not comply with that section. And that's also referenced–incorporated into the policy; therefore, the terms of the policy were not complied with. That's undisputed, I believe. But the court finds that there could be a question of waiver. And I believe that these matters could be waived.
>
> The question [which] then arises is does the vague reference to a telephone conversation constitute–or viewed in a light most favorable to the plaintiff, does that constitute sufficient evidence to be material in a decision.
>
> And quite simply, the court finds that under the facts of this case that

the reference to a telephone call, with nothing more than has been put forth today, does not constitute sufficient evidence to be material, to affect the decision.

Ms. Woznicki filed a motion to alter or amend the judgment, which the court denied. She then filed this appeal.

**Analysis**

Ms. Woznicki contends that the circuit court erred in granting summary judgment because she had established genuine dispute of material fact as to whether GEICO waived compliance with the Consent to Settle Clause and § 19-511. Ms. Woznicki also argues that § 19-110 required GEICO to demonstrate actual prejudice before it could defend its denial of coverage based on her failure to comply with the Consent to Settle Clause and § 19-511 and that GEICO failed to do so.

GEICO disputes these assertions and, additionally, contends that § 19-511 is non-waivable as a matter of law. We will discuss each of these arguments, beginning with GEICO's.

**I. Does § 19-511 Preclude Waiver by an Insurer?**

GEICO contends that § 19-511 is non-waivable. In so arguing, it relies upon the legislature's use of the word "shall" in the statute itself as well as a statement of this Court in our opinion in *Buckley v. Brethren Mut. Ins. Co.*, 207 Md. App. 574, 600 (2012) ("*Buckley I*"), *aff'd* __ Md. __, 2014 WL 838860 (filed March 4, 2014) ("*Buckley II*"), wherein we stated (emphasis added):

6

To be clear, in order to comply with § 19-511, after a UM carrier receives notice of a settlement offer from an injured insured, the UM carrier **must do one of two things**: it **must** either (1) consent to the settlement offer (and, as a result, waive its right to contest tort liability) or (2) refuse to consent and pay the injured insured the amount of the settlement offer within 30 days of issuing its refusal to consent. . . . .

*Buckley I* was concerned with an insurer's obligations when its insured sends it a notice of settlement that complied with § 19-511's requirements. Whether an insurer can waive strict compliance with the statute is a distinct question that neither *Buckley I* nor *Buckley II* addresses.

Moving beyond *Buckley*, we find GEICO's reliance on the language of § 19-511 to be unwarranted. To be sure, "shall," as a general rule, suggests a mandatory duty. *See Perez v. State,* 420 Md. 57, 63 (2011) ("'When the Legislature commands that something be done, using words such as "shall" or "must" rather than "may" or "should," the obligation to comply with the statute or rule is mandatory.'") (quoting *State v. Green,* 367 Md. 61, 82 (2001)). That performance of a duty is mandatory is one thing; that a private entity to whom the duty is owed cannot waive strict performance is quite another.[4]

We are also aware that, when the General Assembly wants to make it clear that a statutory provision is non-waivable, it generally says so explicitly. *See, e.g.,* Insurance

---

[4]The rule is sometimes different with regard to public bodies. *See, e.g., Bright v. Unsatisfied Claim & Judgment Fund Bd.*, 275 Md. 165, 170 (1975) (stating that absent a specific statutory provision, an administrative agency may not waive or extend a mandatory filing deadline.).

7

Article § 18-119(b)(2) ("The right of surrender may not be waived."); Md. Code Ann. (2006, 2013 Supp.) § 5-1105 of the Courts & Judicial Proceedings Article (providing that "[t]he provisions of this subtitle may not be waived"); Md. Code Ann. (1974, 2010 Repl. 2013 Supp.) § 11B-108(d) of the Real Property Article ("RP") (providing that "[t]he rights of a purchaser under this section may not be waived in the contract and any attempted waiver is void . . . ."); RP § 11B-103 ("Except as expressly provided in this title, the provisions of this title may not be varied by agreement, and rights conferred by this title may not be waived."); Md. Code Ann. (1975, Repl. 2013) § 14-2402(c) of the Commercial Law Article (providing that "[t]he right of cancellation [of vacation club membership] may not be waived or otherwise surrendered.").

This sort of language is absent from § 19-511. Moreover, Maryland's case law interpreting § 19-511, as well as the statute's legislative history, make it clear that the statute is intended to benefit an insured by facilitating settlements of claims against a tortfeasor when a UIM claim has been or may be asserted. *See Buckley II*, 2014 WL 838860 at *7-8; *Keeney v. Allstate Ins. Co*., 130 Md. App. 396, 401 (2000).[5] We are not persuaded that § 19-

---

[5]In *Keeney*, this court explained:

[T]he legislative goal of [the statutory predecessor to § 19-511] was to resolve a common problem that beset litigants attempting to settle tort claims. The liability carrier for the allegedly negligent party typically was not willing to pay its policy limits unless it received a release from the injured party. The liability carrier's reluctance . . . was based on a well-founded fear that, if it paid its limits without a release, it would subject its insured to a subrogation claim by the injured party's UM carrier; and if, as

(continued...)

8

511's remedial purposes would be served by holding that an insurer cannot, as a matter of law, waive strict compliance in an appropriate situation. Even if we were so inclined, we "may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, nor . . . construe the statue with forced or subtle interpretations that limit or extend its application." *City of Baltimore Dev. Corp. v. Carmel Realty Assocs.*, 395 Md. 299, 318 (2006) (internal quotation marks and citation omitted).

## II. Was there a genuine dispute of material fact as to waiver?

"Whether summary judgment was granted properly is a question of law" and our review is *de novo*. *Livesay v. Baltimore County*, 384 Md. 1, 9 (2004). We conduct an independent review of the record considered in the light most favorable to the non-moving party to decide whether there are issues of material fact. *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 714 (2007). In determining whether there are disputes as to material facts, we construe reasonable inferences in favor of the non-moving party. *Educ. Testing Serv. v. Hildebrant*, 399 Md. 128, 140 (2007). To avoid summary judgment, the non-moving

---

[5](...continued)
a defendant in a subrogation suit, the insured had to pay money out of his/her pocket, it might well subject the insurer to liability in a bad-faith action filed against it by its own insured . . . . On the other hand, prior to the enactment [of § 19-511's statutory predecessor], the UM carrier typically would not consent to a release being signed because that would destroy any possibility of obtaining in a subrogation suit any of its money back from the alleged negligent party. In sum, the main purpose and effect of the statute was to resolve a recurrent problem that arose when parties attempted to settle tort cases.

130 Md. App. at 403 (2000).

party must establish the existence of a genuine dispute of material fact. *Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737 (1993). To be "genuine" in this context, the dispute must be more than hypothetical or conjectural: "the mere existence of a scintilla of evidence in support of the [non-moving party's] claim is insufficient to preclude the grant of summary judgment; there must be evidence upon which the jury could reasonably find for the plaintiff." *Id.* at 738. Put another way, "when a movant has carried its burden, the party opposing summary judgment 'must do more than simply show there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." *Hovnanian Land Inv. Group, LLC v. Annapolis Town Centre at Parole, LLC*, 421 Md. 94, 122 (2011) (internal quotation marks and citation omitted). To demonstrate the existence of an implied waiver, there must be evidence that the actions of the purportedly waiving party were "inconsistent with an intention to insist upon enforcing" the provisions of a contract. *Id.* (internal quotation marks and citations omitted). Generally, the question of waiver requires "resolution of many factual disputes and drawing of factual inferences." *Hovnanian*, 421 Md. at 122.

Ms. Woznicki contends that the court erred by granting GEICO's motion for summary judgment because she established the existence of a genuine dispute of material

fact as to whether GEICO waived its rights under the Consent to Settle Clause and § 19-511. She asserts that this waiver occurred during the course of Castle's telephone conversation with the unidentified GEICO employee in July, 2011. The only source of information about that conversation in the record is Castle's deposition.

Castle testified that, prior to the July telephone conversation with the GEICO employee, he had not read Ms. Woznicki's GEICO policy, but "probably" had reviewed the declaration page. Thus, he was unaware of the Consent to Settle Clause. He also testified that he was unaware of § 19-511. With that background, we set out the relevant portions of his testimony (emphasis added):

[Counsel for GEICO]:     Did, in fact, GEICO ever give you consent to settle [Ms.] Woznicki's claim against [] Houston, who was insured by Nationwide?

[Castle]:     **It was my understanding that they had**, and it was done by telephone. And it was not Davis. It was somebody taking her place when she was unavailable.

[Counsel for GEICO]:     Tell me those details.

[Castle]:     My recollection is a telephone call to GEICO asking forDavis with whom I'd been dealing with all along.

[Counsel for GEICO]:     And when did that happen?

[Castle]:     Well, it would have been probably within a week, ten days of July 7th prior to. I can't tell you exactly. And [Davis] was unavailable. And I spoke to someone who asked for the file number and policy number and so forth and told – it was a female. I know that. **And told her that– what the situation was and asked her what she wanted from me to confirm this.** And I was told that she wanted a copy of the Release and

11

a copy of the Declaration Page from the Nationwide Policy. And that would be the extent of it.

* * * *

[Counsel for GEICO]:	Do you have any documentation of that phone call?

[Castle]:	Not that I'm aware of.

[Counsel for GEICO]:	Not knowing [about §] 19-511, why would you have called GEICO even to get their permission then?

[Castle]:	Because that's our practice in Delaware, and that has always been my customary practice when I'm dealing with an underinsurance claim, to be very careful to advise the underinsurance carrier as soon as I have a sense that there's going to be an underinsured claim, **which I think I did with GEICO**, and also to find out whether there are any special circumstances or evidence that they want. And I also am very careful to make it clear in the Release that I'm not releasing the underinsurance claim.

* * * *

[Counsel for GEICO]:	When you spoke with them, had you already settled with Nationwide?

[Counsel for Woznicki]:	You mean settled, you mean like accepted the tender?

[Counsel for GEICO]:	Accepted the tender from Nationwide.

[Counsel for Woznicki]:	Or gotten a check or – I don't know what you mean.

[Counsel for GEICO]:	**Reached an agreement with Nationwide that the claim of [Ms.]Woznicki against [] Houston was settled.**

[Castle]:	As a practical matter, I certainly would have told them that we have settled or [are] going to settle or [are] willing to settle, that we're going to take it. **I certainly would have communicated that that phase of the case is or has been or will be settled,**

12

**and we're going to be asserting a claim against GEICO for the underinsured coverage.** What exact words I used, I can't tell you.

[Counsel for GEICO]:    **Okay. So you have given–you had advised Nationwide that for all practical purposes [Ms.] Woznicki's claim against Mr. Houston was settled, but you wanted to pursue a UIM claim against GEICO?**

[Castle]:    **That's true.**

* * * *

[Counsel for GEICO]:    As I understand the conversation that you . . . claim to have had with GEICO about settlement with Nationwide, you're not able to tell precisely whether you said it was your intention to settle or whether the claim had been settled? You just know you spoke with GEICO about settling the claim?

[Castle]:    **I know I spoke with GEICO, and I know I would have told them what the realities were** and that the case was in the process of being settled. **Whether I said has been settled or will be settled or we need your permission to settle – I don't think I said that**, but I told them what the facts were.

* * * *

[Counsel for GEICO]:    Did GEICO ever tell you that it did not require written notification?

[Castle]:    Only the conversation I referred to in which I asked them what they needed, and I was told the Release and the Declaration Page.

[Counsel for GEICO]:    **But you would agree you were never told that you do not need to get written consent from GEICO?**

[Castle]:    **I don't recall ever being told that in so many words, no.**

To survive summary judgment, Ms. Woznicki, as the non-moving party, had the

burden to demonstrate that there was a dispute of material fact as to whether GEICO waived its rights under the Consent to Settle Clause. Because of the absence of other evidence in the record, the answer to this question hinges on whether a fact finder could reasonably conclude from Castle's deposition testimony that the GEICO employee did so. *Beatty v. Trailmaster Products, Inc.*, 330 Md. at 738-39. Ms. Woznicki's contentions that she met this standard are not persuasive.

Although it is clear from the Castle's deposition that he told Nationwide that he intended to assert a UIM claim against GEICO on Ms. Woznicki's behalf, it is not clear that Castle ever explicitly informed GEICO that he intended to assert a UIM against it. For the purposes of analysis, however, we will read Castle's testimony as supporting such an inference.

That notwithstanding, there is nothing in the deposition testimony that supports a reasonable inference that Castle asked GEICO to waive the procedural requirements set out in the Consent to Settle Clause and § 19-511. Castle did not testify that he actually asked for such a waiver—not surprising because he was unaware of both the contract provision and the statute at the time he had the conversation. Similarly, there is nothing in the testimony that supports a reasonable inference that the unidentified GEICO employee gave Castle permission to settle without prejudice to Ms. Woznicki's UIM claim. What is conspicuously missing from Castle's testimony is any description of what the GEICO employee actually said to him other than that she asked him to provide a copy of the declaration page and the

release. Such a request, standing alone, is not remotely equivalent to a consent to settle when considered in the context of the specific requirements of the Consent to Settle Clause and § 19-511.

Castle's subjective understanding that GEICO had waived compliance is without probative value because he did not provide any indication of what was said to him to justify the conclusion. To the extent that there was miscommunication, moreover, GEICO cannot be faulted because Castle had not read the policy and Castle is chargeable with knowledge of Maryland law, specifically § 19-511. *See, e,g,, State v. Chaney*, 375 Md. 16, 181 (2003).

Ms. Woznicki also contends that, because Castle told the unnamed GEICO employee the claim and policy numbers, the unnamed GEICO employee would have known from the file (which presumably included a communication log) that Ms. Woznicki intended to assert a UIM claim because Castle had updated GEICO regarding Ms. Woznicki's medical progress. We think this is a reasonable inference. But, as we have explained, Ms. Woznicki must do more than demonstrate that the unidentified GEICO employee was aware that a UIM claim might be asserted. She must also demonstrate facts that give rise to a reasonable inference that the employee waived compliance with the contractual and statutory requirements.

Finally, Ms. Woznicki presented no evidence to support a reasonable inference that Castle's interlocutor had either express or apparent authority to waive compliance with either the Consent to Settle Clause or § 19-511. Castle's testimony lacks any specific

information that would permit a fact-finder to assess the reasonableness of his belief that the GEICO employee was so authorized. Ms. Woznicki asserts that she was entitled to an inference that the unnamed GEICO employee had the authority to waive GEICO's statutory and contractual rights because the unnamed GEICO employee requested the claim and policy numbers from Castle during the telephone call. Absent specific facts as to what the GEICO employee actually said, such a conclusion would be wholly speculative.

### III. Insurance Article § 19-110 and the Requirement of Prejudice

Section 19-110 provides:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.[6]

Ms. Woznicki contends that § 19-110 applies to GEICO's denial of UIM coverage because the Consent to Settle Clause was essentially a notice provision. She suggests that, because the record indicates that Houston was elderly and had only the statutory minimum in coverage, there was a dispute of fact as to whether GEICO was actually prejudiced by her failure to comply with the Consent to Settle Clause.

GEICO's position is that § 19-110 does not apply because the Consent to Settle Clause is not a notice provision. Instead, GEICO posits that the Consent to Settle Clause is

---

[6]For a detailed analysis of § 19-110's legislative history and the cases interpreting and applying the statute, *see Sherwood Brands, Inc. v. Great Am. Ins. Co.*, 418 Md. 300, 311–24 (2011).

16

a condition precedent to coverage and is thus outside § 19-110's ambit. GEICO also argues that requiring an insurer to show actual prejudice when denying coverage based on a breach of the Consent to Settle Clause and § 19-110 "would improperly shift the burden to the insurer to retrospectively determine that its subrogation rights were viable. There would be no incentive for an insured to ever comply with the policy terms or the statutory provisions, as the insured could always simply claim no prejudice."

The parties present us with an issue that has not yet been decided in Maryland, namely whether an insurer must demonstrate prejudice in order to deny UIM coverage based on its insured's breach of § 19-511 or a corresponding policy provision.[7] We conclude that § 19-110 should not apply in situations such as the one before us.

Section 19-110 requires an insurer to prove that it was actually prejudiced if it disclaims coverage and raises "a failure to cooperate defense or a defense based on lack of notice." *Phillips Way, Inc. v. Am. Equity Ins. Co.*, 143 Md. App. 515, 521 (2002). Generally, an insured's duty to cooperate "include[s] the obligation to make a fair, frank and truthful disclosure to the insurer for the purpose of enabling it to determine whether or not there is a defense, and the obligation, in good faith, both to aid in making every legitimate defense to the claimed liability and to render assistance at trial." *Travelers Ins. Co. v. Godsey*, 260 Md. 669, 673 (1971). An insured's duty to provide required notice is generally an obligation

---

[7]We also address the prejudice issue in a companion case, *Jeannine Morse v. Erie Insurance Exchange*, ___ Md. App. ___, No. 0511, September Term 2013. We refer the reader to *Morse* for a more comprehensive analysis of the relationship between §§ 19-110 and 19-511.

to give the insurer notice of a claim or occurrence in order to ensure that the insurer has the "opportunity to acquire full information about the circumstances of the case, assess its rights and liabilities, and take early control of the proceedings." *Prince George's County v. Local Gov't Ins. Trust*, 388 Md. 162, 184 (2005).

When an insurer denies coverage on the basis of something other than a failure of notice or a failure of cooperation, § 19-110 does not apply. The Court of Appeals and this Court emphasized the narrow scope of what is now § 19-110 in two cases: *GEICO v. Harvey*, 278 Md. 548 (1976) and *Phillips Way, Inc. v. Am. Equity Ins. Co.*, 143 Md. App. 515 (2002).

In *Harvey*, an insured provided timely notice of an automobile accident to her insurer, but failed to comply with a policy provision that required her to provide written proof of loss "including full particulars of the nature and extent of the injuries and treatment received and contemplated" within six months of the date of the accident as a condition precedent to the insured paying personal injury protection ("PIP") benefits. *Harvey*, 278 Md. at 550-51. Applying § 19-110's substantially similar statutory predecessor, § 482 of Article 48A,[8] the

[8]Section 482 of Article 48A provided:

> Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer.

(continued...)

Court of Appeals concluded that, when defending its denial of coverage based on breach of the proof of loss provision, the insurer did not have to demonstrate prejudice because: (i) the policy clearly included a required notice of an accident provision separate and apart from the proof of loss provision; and (ii) proof of loss, as opposed to notice provisions:

> enables the insurer to ascertain the nature, extent and character of the loss and to set reserves accordingly. The chief purpose of a proof of loss is to acquaint the insurance company with certain facts and circumstances relative to the loss, forming a basis for further steps to be taken by the company, ranging from full settlement to absolute repudiation of liability."

*Harvey*, 278 Md. at 553.

In *Phillips Way, Inc. v. Am. Equity Ins. Co.*, 143 Md. App. 515 (2002), this Court considered whether § 19-110 applied where an insurer denied coverage based on its insured's failure to comply with a so-called "no-action clause."[9] We concluded that the

---

[8](...continued)

*Harvey*, 278 Md. at 551-52.

[9]The no-action clause at issue in *Phillips Way* stated:

No action shall be maintained against the Company by the Insured to recover for any loss under this Insurance Policy unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms and conditions of this Insurance Policy, nor until the amount of such loss has been fixed or rendered certain by either final judgment against the Insured after trial of the issues and the time to appeal therefrom has expired without an appeal having been taken, or, if an appeal has been taken, then after the appeal has been determined or by agreement between the parties with the written consent of the Company.

143 Md App. at 517 (emphasis omitted).

19

insurer was not required to show specific prejudice when it denied coverage because the insured breached the no-action clause: "the requirements for notice of claim[] and the separate requirement for cooperation with the insurer,[] are contained in separate paragraphs from the 'no-action' clause," *id*. at 522-23 (footnotes omitted); and (ii) "one of the main purposes of the non-action clause is to protect it from collusive or overly generous or unnecessary settlements by the insured at the expense of the insurer." *Id.* at 524 (internal quotation marks and citation omitted). We continued: "[t]hat last-mentioned purpose would be difficult to accomplish if an insured could disregard the no-action clause, sue its insurer, and put the nearly impossible burden on the latter of showing collusion or demonstrating, after the fact, the true worth of the settled claim." *Id.* at 524.

Returning to the present appeal, and guided by the reasoning of *Harvey* and *Phillips Way*, we conclude that the Consent to Settle Clause in the GEICO policy is conceptually similar to the "no action" provision at issue in *Phillips Way*. Like a "no action" provision, the Consent to Settle Clause protects an insurer against the possibility of collusive and unreasonable settlements. The Consent to Settle Clause must be read in conjunction with § 19-511. We recognize that the Consent to Settle Clause and § 19-511 have a notice component, namely that the insured notify the UIM insurer of a potential settlement with the tortfeasor's insurer. However, both the policy provision and the statute go beyond mere notice. For example, the insured must wait 60 days to permit the insurer to investigate the feasibility of a subrogation action against the tortfeasor's carrier and, based upon the results

20

of that effort, either to consent to the settlement offer (in which case the insured may move forward with the settlement), to reject the settlement offer (in which case the insurer has 30 days to pay the liability insurer's coverage limits to the insured), or to fail to respond (in which case the insurer may move forward with the settlement).

Prejudice to an insurer can occur when "the insured has presented the insurer with a *fait accompli* by delaying notice until after the judgment. The delay vitiates the purpose of the contractual notice requirement, as the insurer cannot exercise any of its rights to investigate, defend, control, or settle the suit." *Prince George's County v. Local Gov't Ins. Trust*, 388 Md. at 190. Ms. Woznicki effectively presented GEICO with a similar *fait accompli* by releasing the tortfeasor before GEICO had an opportunity to assess whether to assert a subrogation claim. Section 19-511 is clear that the decision whether to waive the right of subrogation is for the insurer, not the insured, to make.

Section 19-511, like its contractual counterpart, was designed to resolve some of the barriers to prompt recovery which can arise when a person injured by a UIM motorist attempts to settle with the tortfeasor's liability insurer (which, in turn, requires a release of all claims) and the injured person's UIM carrier does not permit the injured person to sign the release for fear of losing its right of subrogation. *See Buckley II*, 2014 WL 838860 at *7-8; *Keeney*, 130 Md. App. at 403. The statute represents the General Assembly's attempt to balance the legitimate expectations of an injured insured with the right of an insurer to investigate before consenting to a release of its subrogation rights. *Id.*; *see also Keeney*, 130

21

Md. at 401-03. We agree with GEICO that this balance would be threatened if an insured could disregard the Consent to Settle Clause and § 19-511, settle the claim for policy limits with the liability insurer (thus extinguishing the UIM insurer's subrogation rights), and then place the burden on the UIM insurer to prove, after the fact, that there was actually a viable subrogation claim. In our view, the analyses of *Prince George's County*, *Harvey*, and *Phillips Way* point clearly to this conclusion.

On the record before us, Ms. Woznicki presents a sympathetic figure. But this is not a basis for us to provide her the remedy she seeks in light of the facts of this case and the law as we understand it.

**THE JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY IS AFFIRMED. APPELLANT TO PAY COSTS.**