*George Bowens v. State Farm Mutual Automobile Insurance Company*, No. 10, September Term, 2025, Opinion by Killough, J.

**INSURANCE LAW-SUBJECT MATTER JURISDICTION-UNDERINSURED MOTORIST CLAIM**

The Supreme Court of Maryland held that the District Court of Maryland had jurisdiction to hear Petitioner's claim. Under § 4-401(1) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, the debt or damages claimed is to be determined by the amount demanded in the pleadings. When an action is based in contract and the debt claimed is $30,000 or less, the District Court has jurisdiction under § 4-401(1).

IN THE SUPREME COURT
OF MARYLAND

---

No. 10

September Term, 2025

---

GEORGE BOWENS

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

---

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

---

Opinion by Killough, J.

---

Filed: November 24, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Uninsured and underinsured motorist ("UIM") coverage is statutorily required in every motor vehicle liability policy issued in Maryland. *See* Md. Code Ann., Ins. ("Ins.") §§ 19-509 to 19-511. This mandatory coverage protects insured drivers from out-of-pocket losses when the responsible motorist is uninsured or inadequately insured to cover the full extent of the insured's injuries. *See Nationwide Mut. Ins. Co. v. Shilling*, 468 Md. 239, 242 (2020). The question presented in this appeal is whether, for purposes of establishing jurisdiction of the District Court of Maryland under § 4-401(1) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland ("CJP"), the phrase "debt or damages claimed" includes sums previously paid to the insured by the tortfeasor's liability insurer, or only the amounts the plaintiff seeks to recover in uninsured or underinsured benefits.

This case arises out of a February 2023 automobile accident in Prince George's County, Maryland, between Petitioner, George Bowens, and a vehicle driven by an underinsured motorist, Lisa Daniels. The accident itself is not relevant to this appeal, as the parties agree that Daniels was at fault. Consistent with Maryland law, Bowens held a $50,000 UIM policy with the Respondent, State Farm Mutual Insurance Company ("State Farm"). Daniels maintained a UIM automobile insurance policy with a policy limit of $30,000, which was offered to Bowens to settle his claim against Daniels. Pursuant to Ins. § 19-511, Bowens notified State Farm of Daniels' insurer's settlement offer, and State

Farm consented to the settlement and agreed to waive its subrogation[1] rights against Daniels. Bowens subsequently accepted the settlement offer with Daniels, and then made a UIM claim under his own insurance policy with State Farm seeking payment of his $50,000 policy limits minus the $30,000 he already recovered from Daniels' insurer (*i.e.*, $20,000). State Farm denied that claim, prompting Bowens to file a breach of contract suit in District Court to recover $20,000 under his State Farm UIM policy, as permitted by Ins. §§ 19-511(f)(1) and 19-509(g).

State Farm moved to dismiss the lawsuit, arguing that because Bowens would first have to prove total tort damages of $50,000 to recover under its UIM policy, the action was beyond the District Court's threshold jurisdiction amount of $30,000 under CJP § 4-401(1). The District Court granted State Farm's motion to dismiss, which was affirmed on appeal to the circuit court.

For the reasons explained below, we hold that the phrase "debt or damages claimed" is measured by the sum the plaintiff seeks from the defendant in the pending District Court action and does not include amounts previously paid to the plaintiff by a tortfeasor's liability insurer. Because Bowens' breach of contract action against State Farm sought only the remaining $20,000 available under his $50,000 UIM policy, the District Court had subject matter jurisdiction under CJP §§ 4-401(1) and 4-402(d)(1)(i). We therefore reverse

---

[1] Subrogation is the process where one party assumes the legal rights of another, typically in the insurance context when the insurer takes over its insured's right to sue. *TravCo Ins. Co. v. Crystal Williams*, 430 Md. 396, 399 n.1 (2013).

the judgment of the circuit court and remand the case to that court with instructions to remand the case to the District Court for proceedings consistent with this opinion.

## I.

## Background

"Because this case was decided on a motion to dismiss, we take the well-pleaded allegations set forth in [Bowens'] complaint as true for purposes of our analysis, and we recount them here as alleged." *Wheeling v. Selene Finance LP*, 473 Md. 356, 367 (2021).

### A. Facts as Alleged in the Complaint

Bowens is a resident of Prince George's County, where State Farm does business and provides vehicle insurance coverage. On February 9, 2023, a vehicle operated by Lisa Daniels struck Bowens' car. As a result of the automobile accident, Bowens sustained painful and permanent injuries, incurred significant medical expenses, and suffered a loss of leisure activities and enjoyment of life. It is undisputed that Daniels' negligence was the cause of the accident. At the time of the incident, Bowens' vehicle was insured under a State Farm policy providing UIM coverage in the amount of $50,000. Daniels was insured under a liability policy with limits of $30,000. Daniels' insurance carrier offered to settle Bowens' claim for the full $30,000 policy limits. Pursuant to Ins. § 19-511(b), Bowens notified State Farm in writing of the settlement offer from Daniels' insurer. State Farm elected to waive subrogation and consented in writing to permit the settlement with Daniels' insurance carrier under Ins. § 19-511(c).

After receiving the $30,000 settlement from Daniels' insurer, Bowens sought payment of the remaining $20,000 available under his $50,000 State Farm UIM policy.

State Farm denied the claim. Bowens then filed a breach of contract action against State Farm in District Court seeking to recover $20,000 in UIM benefits—the only debt at issue in this case.

## B. District Court Proceedings

Shortly after Bowens filed his complaint in the District Court for Prince George's County, State Farm moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim or, in the alternative, moved to transfer the action to the circuit court. The gist of State Farm's motion was that the District Court lacked jurisdiction to award Bowens $20,000, because, to do so, it would necessarily have to find that Bowens' total damages were $50,000—an amount exceeding the District Court's $30,000 jurisdictional limit.

In its motion, State Farm conceded that Bowens' complaint alleged breach of contract and sought to recover only the remaining $20,000 under his UIM policy. Nonetheless, State Farm argued that Maryland law treats such actions as quasi-tort in nature for jurisdictional purposes and therefore requires application of tort principles. Relying on *Erie Ins. Exch. v. Heffernan*, 399 Md. 598 (2007), and *Allstate Ins. Co. v. Miller*, 315 Md. 182 (1989), State Farm maintained that to recover from his carrier, Bowens "must prove the contract and then his tort claim." Since the tort claim "is an element of [Bowens'] right to recover damages," the factfinder would need to find tort damages in excess of the $30,000 District Court jurisdictional limit set forth in CJP § 4-401(1).

The District Court granted State Farm's motion to dismiss, and Bowens appealed the District Court's decision to the Circuit Court for Prince George's County.

## C. Circuit Court Proceeding

4

The Prince George's County Circuit Court affirmed the District Court's dismissal of Bowens' complaint. In its opinion, the circuit court explained:

> The undisputed facts demonstrate[] that Daniels, the original tortfeasor, had a policy of liability insurance the limits of which were less than those of Bowens' uninsured/underinsured motorist policy of $50,000. Daniels' insurer tendered her policy of $30,000. As such, although Bowens' insurance coverage exceeds the liability coverage of Daniels, in order for Bowens to now recover $20,000 in damages from State Farm under his insurance policy, he would have to prove his damages also exceed Daniels' $30,000 liability coverage. The District Court would therefore have to find that Bowens' damages were more than $30,000, and enter judgment in an amount greater than $30,000, subject to a reduction of the $30,000 Bowens received from Daniels' insurer. Due to the District Court's jurisdictional limit of $30,000, it cannot grant such an award. *See* Md. Cts. & Jud. Proc. § 4-401(1) (providing that the District Court has exclusive original civil jurisdiction over actions in contract or tort, if the debt or damages claimed do not exceed $30,000). Thus, the District Court was legally correct in finding that it lacked subject-matter jurisdiction to hear Bowens' action against State Farm as his damages claim was in excess of the jurisdictional limit.

Bowens subsequently filed a timely petition for a writ of certiorari, which we granted.

## II.

### Discussion

We review the circuit court's decision "without deference" because "[w]here questions of law and statutory interpretation are presented, this Court reviews them *de novo*[.]" *Wheeling*, 473 Md. at 373.

### A.

To determine whether the District Court has jurisdiction in a UIM coverage case, courts must read CJP § 4-401(1) together with Ins. §§ 19-509–19-511. Section 4-401(1) establishes the District Court's monetary threshold for purposes of jurisdiction generally;

5

the Insurance Article defines the UIM carrier's liability exposure and the statutory mechanism to determine recoverable relief.

Section 4-401 explains when the District Court has exclusive jurisdiction over a matter. It provides:

> Except as provided in § 4-402 of this subtitle, and subject to the venue provisions of Title 6 of this article, the District Court has exclusive original civil jurisdiction in:
>
> (1) An action in contract or tort, *if the debt or damages claimed* do not exceed $30,000, exclusive of prejudgment or post judgment interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract"

(emphasis supplied). Section 4-402(d)(1)(i) provides:

> (d)(1)(i) Except in a case under paragraph (2), (4), (5), or (6) of § 4-401 of this subtitle, the plaintiff may elect to file suit in the District Court or in a trial court of general jurisdiction, if the amount in controversy exceeds $5,000, exclusive of prejudgment or postjudgment interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract.

Thus, CJP §§ 4-401(1) and 4-402(d)(1)(i) confer concurrent jurisdiction on the District Court and the circuit court when the plaintiff's claimed damages exceed $5,000 but do not exceed $30,000. Moreover, a party in a civil trial where the amount in controversy is more than $25,000 may demand a jury trial in circuit court. *See* CJP § 4-402(e)(1). So, if an insured brought a claim in District Court against their insurer for more than $25,000, the insurer could demand a jury trial and compel the case transferred to circuit court. But here, Bowens' claim is for $20,000, and he elected to file in the District Court. Our analysis therefore proceeds under CJP § 4-401(1).

On its face, CJP § 4-401(1) is plain and unambiguous: "[I]f the debt or damages claimed do not exceed $30,000," the case belongs in District Court. The question here is

6

what constitutes the "debt or damages claimed" for purposes of the District Court's jurisdiction. Bowens' total injuries associated with the accident amount to $50,000—above the District Court's jurisdictional limit—but he has already received $30,000 from the tortfeasor's insurer. To answer the jurisdictional question, it is necessary to determine the nature and measure of State Farm's total UIM liability by reference to Ins. §§ 19-509 through 19-511. Those provisions determine whether the insured's claim sounds in contract or tort, establish the recoverable amount under the UIM policy, and prescribe the procedural mechanics that affect who may be sued and for what sum. Read together, the Insurance Article supplies the "debt or damages claimed" to which CJP § 4-401(1)'s $30,000 ceiling must be applied.

## B.

We begin with Ins. § 19-509 because that provision fixes the statutory floor for monetary exposure of UIM carriers and ultimately bears on the CJP § 4-401(1) inquiry. Insurance § 19-509(e)(1)(i) mandates that uninsured motorist coverage "shall at least equal the amounts required by Title 17 of the Transportation Article," and may not exceed the policy's liability limit. Thus, the UIM minimum is tied to the policy's liability minimum. Pursuant to Transportation Art. § 17-103(b)(1), as in effect at the time of the Daniels accident, that statutory minimum was "$30,000 for any one person and up to $60,000 for any two or more persons, in addition to interest and costs." Insurance § 19-510 further confirms that, unless waived, the insurer must provide UIM coverage that is at least equal to liability coverage. Accordingly, at all relevant times, the baseline uninsured motorist bodily injury coverage in Maryland was $30,000 per person / $60,000 per accident.

7

Insurance § 19-511 prescribes the procedure by which an insured may pursue UIM benefits when a tortfeasor's liability limits have been exhausted. Specifically, Ins. §§ 19-511(b) through (g) provide, in relevant part:

(b) If an injured person receives a written offer [that] would exhaust the injury or death limits[,] the injured person shall send by certified mail [] a copy of the liability insurer's written settlement offer.

(c) Within 60 days after receipt of the notice required under subsection (b) of this section, the uninsured motorist insurer shall send to the injured person:

(1) written consent to acceptance of the settlement offer and to the execution of releases; or

(2) written refusal to consent to acceptance of the settlement offer.

(d) Within 30 days after a refusal to consent to acceptance of a settlement offer under subsection (c)(2) of this section, the uninsured motorist insurer shall pay to the injured person the amount of the settlement offer.

(e)(1) Payment [under (d)] shall preserve the uninsured motorist insurer's subrogation rights[.]

(2) Receipt by the injured person of the payment described in subsection (d) of this section shall constitute the assignment, up to the amount of the payment, of any recovery on behalf of the injured person that is subsequently paid from the applicable liability insurance policies, bonds, and securities.

(f) The injured person may accept the liability insurer's settlement offer and execute releases in favor of the liability insurer and its insured without prejudice to any claim the injured person may have against the uninsured motorist insurer:

(1) on receipt of written consent to acceptance of the settlement offer and to the execution of releases; or

(2) if the uninsured motorist insurer has not met the requirements of subsection (c) or subsection (d) of this section.

8

(g) Written consent by an uninsured motorist insurer to acceptance of a settlement offer under subsection (c)(1) of this section:

   (1) may not be construed to limit the right of the uninsured motorist insurer to raise any issue relating to liability or damages in an action against the uninsured motorist insurer; and

   (2) does not constitute an admission by the uninsured motorist insurer as to any issue raised in an action against the uninsured motorist insurer.

Ins. § 19-511(b)–(g).

Insurance § 19-511 thus embodies the General Assembly's effort to balance two important objectives: (1) promoting settlements with tortfeasors so injured persons receive prompt compensation, and (2) preserving the contractual rights of insureds to recover any remaining UIM benefits. *See, e.g., Heffernan*, 399 Md. at 612 ("The purpose of the uninsured motorist statute is to provide minimum protection for individuals injured by uninsured motorists[.]"). As we explained in *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332 (2014):

> [Previously,] an injured person who made a claim against a liability carrier for limits available under the liability policy was frequently not allowed by their uninsured/underinsured motorist carrier to give the liability carrier a full release of their claim. Therefore, if the injured person wished to make an additional claim for their injuries against their underinsured motorist coverage, they got caught in a situation where the liability carrier would not give them the limits of the at-fault party's policy without a release and the uninsured/underinsured motorist carrier would not allow them to give a release to the liability carrier. As a result, they were unable to recover funds from either carrier. This dilemma could cause a lengthy delay in settlement.

437 Md. 332, 347 (2014) (quoting *Keeney v. Allstate Ins. Co.*, 130 Md. App. 396, 401 (2000)) (cleaned up). Under Ins. § 19-511, "the insured party gets his money more quickly and the uninsured/underinsured motorist carrier would have 'up front' the liability

settlement [offered by the tortfeasor's insurer]." *Keeney*, 130 Md. App. at 402 (quoting Senate Floor Report for S.B. 253 (1995)). Under Ins. §§ 19-511(b)–(c), a claimant must forward a written settlement offer to the UIM carrier, which then must elect to either consent to the settlement and waive subrogation under Ins. § 19-511(c)(1), or refuse consent, pay the tendered amount within the statutory period, and preserve its subrogation rights to pursue the tortfeasor. *See* Ins. §§ 19-511(c)(2), (d), (e).

The interplay between Ins. §§ 19-511(f) and 19-509(g) is critical to any jurisdictional determination for UIM matters against an insurer arising in contract for a debt claimed. Insurance § 19-509(g) limits the "liability for an insurer that provides uninsured motorist coverage under [Ins. § 19-509]" to "the amount of [the insured's UIM coverage] less the amount paid to the insured, that exhausts any applicable liability insurance policies, bonds, and securities, on behalf of any person that may be held liable for the bodily injuries or death of the insured." Section 19-511(f) implements that rule by permitting an insured to accept a tortfeasor's settlement without prejudice to a residual claim against the UIM carrier. That recoverable amount determines the debt claimed for jurisdictional purposes under CJP § 4-401(1). Thus, Ins. § 19-511 operates not only as a remedial statute to ensure that injured persons receive some compensation for injuries sustained by uninsured or underinsured tortfeasors but also as a mechanism that, in practice, allows an insured to channel smaller residual UIM claims to the District Court for prompt resolution. *See Nationwide Mut. Ins. Co. v. Webb*, 291 Md. 721, 739 (1981) ("It is sound legal policy" to ensure cost-effective, timely resolution of UIM disputes.). In most cases—including this one—where the tortfeasor carries only the statutory minimum

liability coverage and the insured has not purchased enhanced UIM limits, the statutory set-off for amounts paid on the insured's behalf will often eliminate or substantially reduce the amount recoverable from the UIM carrier. This reflects the gap-filling design of Maryland's UIM scheme: the insurer is liable only for the difference between the tortfeasor's limits and the insured's own UIM limits. *See Connors v. Gov't Emps. Ins. Co.*, 442 Md. 466, 475 (2015). Only where an insured has purchased enhanced coverage under Ins. § 19-509.1[2] or otherwise elected higher limits will a residual claim exceed $30,000 and implicate circuit court jurisdiction.

Moreover, in enacting Ins. § 19-511(c), the General Assembly afforded the insurer an election on the procedural posture—an election that has distinct consequences for who sues whom and in which forum. *See* Ins. § 19-511(c); CJP §§ 4-401(1) & 4-402(d)(1)(i); *see also Webb*, 291 Md. at 739-40 (explaining the plentiful procedural options available to insurance carriers in UIM suits). If the insurer refuses consent and pays the tendered amount under Ins. § 19-511(d), it preserves its subrogation rights and may litigate both the subrogation action against the tortfeasor *and* any related claim by the insured in circuit court. If, instead, the insurer consents and waives subrogation under Ins. § 19-511(c)(1), the only remaining action is the insured's first-party contractual claim against the insurer— a claim the insured may bring in District Court if it does not exceed $30,000, or in circuit court if the amount in controversy is at least $5,000. *See* CJP §§ 4-401(1) & 4-402(d)(1)(i).

---

[2] Insurance § 19-509.1 provides that an insured can elect to have a UIM policy that is more than what is statutorily required under Title 17 of the Transportation Article.

11

This framework informs how courts measure the "debt or damages claimed" under CJP § 4-401(1): once the insurance company elects to consent to the settlement, and the insured's residual claim falls within the concurrent jurisdiction of the District Court and circuit courts (pursuant to CJP § 4-402(d)(1)(i)), the insured has the right to choose whether to file the claim in District Court or circuit court. To read CJP § 4-401(1) as permitting insurers to convert every modest UIM claim into a circuit court matter on that basis, where the insured has chosen to pursue their claim in District Court, would nullify the statutory framework established by Ins. § 19-511 and frustrate the General Assembly's intent to facilitate prompt and efficient resolution of such claims.

C.

In this case, it is undisputed that the parties adhered to the procedure set forth in Ins. § 19-511 with respect to the $30,000 settlement payment. As Ins. § 19-511(b) requires, Bowens forwarded Daniels' settlement offer to his UIM carrier, State Farm. Pursuant to Ins. § 19-511(c)(1), State Farm notified Bowens in writing within 60 days of its decision to consent "to acceptance of the settlement offer and to the execution of releases[.]" Had State Farm not consented to Daniels' insurer's settlement under Ins. § 19-511(c)(1), and refused the settlement as contemplated in Ins. § 19-511(c)(2), State Farm would have been required under Ins. § 19-511(d) to pay Bowens the settlement amount offered by Daniels' insurer. State Farm's payment to Bowens would have preserved State Farm's "subrogation rights against [Daniels'] insurer and [Daniels]." *See* Ins. § 19-511(e)(1). State Farm could have then pursued a subrogation action against Daniels and Daniels' insurer in circuit court under Ins. § 19-511(e) to recover the money paid to Bowens and, if necessary, to litigate

12

liability and the extent of Bowens' damages.[3] *See Morse v. Erie Ins. Exch.*, 217 Md. App. 1, 19–23 (2014), *aff'd sub nom. Woznicki v. GEICO Gen. Ins. Co.*, 443 Md. 93 (2015) (explaining what happens when the insurer pursues the action set forth in Ins. § 19-511(c)(2)).

It is also undisputed that Bowens had the right to pursue, and ultimately to sue, State Farm under his UIM policy for any unpaid residual damages up to the UIM policy limits because of the accident. As Ins. § 19-511(f)(1) provides, Bowens' acceptance of Daniels' $30,000 settlement offer did not preclude him from bringing a claim against State Farm for the balance of his UIM coverage. *See also Heffernan*, 399 Md. at 612 ("Consistent with the public policy of affording minimal protection for innocent victims, an insured can purchase 'a higher amount of uninsured motorist insurance which will become available when the insured's uninsured motorist coverage, as well as his damages, exceed the liability coverage of the tortfeasor.'") (quoting *Waters v. U.S. Fid. & Guar. Co.*, 328 Md. 700, 712 (1992)).

Bowens contends that District Court jurisdiction is predicated on the amount of the debt or money in controversy. He relies on *Carroll v. Housing Opportunities Comm'n*, 306 Md. 515, 522–23 (1986), which explains that "the claims of the parties, for money damages or for the right to possession, determine the amount in controversy," *id.* at 523. He argues that his UIM claim against State Farm is a breach of contract action and the debt

---

[3] In such a subrogation action in circuit court, as explained herein, Bowens would also have the right to pursue his residual first-party claim against State Farm for any uncompensated damages up to the UIM policy limits. *See* Ins. § 19-511(f)(1).

that he seeks to recover, $20,000, does not exceed the jurisdictional limit of the District Court. Thus, because the "amount in controversy" here does not exceed $30,000, the District Court had jurisdiction.

State Farm counters that to recover $20,000, Bowens must prove that his total damages from the collision with Daniels were at least $50,000—an amount beyond the District Court's jurisdictional limits. State Farm argues that while Bowens' claim is technically a contract action, it is functionally a tort case where Bowens is required to prove his economic and non-economic damages resulting from the Daniels vehicle collision. From that premise, State Farm concludes the District Court lacks jurisdiction because the underlying tort damages—rather than the amount demanded from the insurer—exceed CJP § 4-401(1)'s $30,000 limit.

We agree with Bowens to the extent that the amount demanded in the complaint for a contractual debt governs the CJP § 4-401(1) inquiry here. State Farm concedes, and it is correct, that this Court has historically treated "debt or damages claimed" as equivalent to the amount demanded in the complaint for torts or the "debt allegedly owed" under a contract. *Compare O'Reilly v. Murdoch*, 1 Gill 32, 39 (1843) (tort case), *with Main v. Fessler*, 89 Md. 468 (1899) (contract case). Although these cases predate the creation of the District Court, they illustrate the longstanding principle that courts distinguish tort and contract claims when measuring a jurisdictional amount.

*O'Reilly* addressed the jurisdictional limits between justices of the peace and county courts in tort cases involving damages. *O'Reilly*, 1 Gill at 39. There, the plaintiff sued an innkeeper for negligence claiming damages more than fifty dollars, but a jury awarded the

14

plaintiff less than fifty dollars. *Id.* at 33–34. The court examined the statutory history and concluded that, in tort cases, justice of the peace jurisdiction turns on the damages claimed in the plaintiff's pleading rather than the sum actually recovered. *Id.* at 39–40.

The court in *Main*, by contrast, involved jurisdiction of justices of the peace in contract cases. *Main*, 89 Md. at 468. The plaintiff brought a breach of contract suit against the defendant to recover money that was owed to them. *Id.* In explaining why the justice of the peace properly had jurisdiction to hear the case, the Court stated: "The cause of action in the case at bar was a contract. The amount due, or alleged to be due, under that contract, was less than $50. The subject of the controversy was therefore solely within the jurisdiction of a justice of the peace . . . ." *Id.* In other words, the debt the defendant owed the plaintiff, as described in the complaint, is the determinable amount for jurisdictional purposes in contract cases. *See id.*

Bowens' claim against State Farm is a first-party coverage dispute—a breach-of-contract action against his insurer—not a tort action. *See Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 552–53 (1979). As we explained in *Reese* in response to a similar argument raised by State Farm: "[a] suit based upon the insured's allegations that he is entitled to payment under [a UIM policy agreed to] with his insurance carrier, and that the carrier has refused payment thereby breaching its promise, is clearly a contract action." *Id.* Indeed, the facts of *Reese* and the present case are closely analogous. In *Reese*, the plaintiff was involved in a car accident where the at-fault tortfeasor was uninsured at the time of the incident. *Id.* at 549–50. When the plaintiff filed a claim with his UIM insurer, State Farm, it denied coverage under the UIM policy issued to the plaintiff. *Id.* at 550. The plaintiff

15

subsequently filed a breach of contract suit against State Farm. *Id.* State Farm argued, among other things, that the plaintiff was required to join the tortfeasor in the suit and first seek recovery from them since the plaintiff's action was really a tort claim attempting to recover tort damages caused by the tortfeasor. *Id.* The plaintiff disagreed, contending that "his action [against State Farm] was in contract rather than tort." *Id.* This Court agreed with the plaintiff, holding that "State Farm's position [was] inconsistent with the nature of the uninsured motorist endorsement as mandated by the statute[.]" *Id.* at 551. We explained that:

> The principal flaw in State Farm's position, including its reliance upon the above-cited cases, is that this is neither a tort action nor an action by an asserted third-party beneficiary of an insurance policy. Instead, this is a breach of contract action by the insured against his own insurer. Under the statutorily required coverage, the defendant has directly promised to pay the insured plaintiff under certain conditions. Because it is a promise by the insurer to pay its own insured, rather than a promise to its insured to pay some third party, the uninsured motorist coverage is in insurance parlance "first party coverage" like collision, comprehensive, medical payments or personal injury protection, and not "third party coverage" such as personal injury or property damage liability insurance . . . . This view is in accord with other cases throughout the country which have held that actions by insureds against their insurers, under uninsured motorist endorsements similar to that prescribed by the Maryland statute, are contract actions and thus are governed by the principles and procedures applicable to contract actions generally.

*Id.* at 552–53. State Farm's reliance on tort labels is no more persuasive today than it was in *Reese*.

Although Bowens' underlying tort damages are claimed to be $50,000, he seeks recovery on a debt—an interest in money—and the debt he claims, capped at $20,000 in his complaint, falls within the District Court's jurisdiction. *See Sharp v. Bates*, 102 Md.

344 (1905) ("[A]ny words which prove a man to be a debtor . . . will charge him with the payment of the money."). It is immaterial that a District Court judge may have to find that the tortfeasor caused damages exceeding $30,000 in order for Bowens to recover under his UIM policy with State Farm. District Court judges routinely assess liability and damages and apply statutory offsets and policy limits. Nothing in the jurisdictional scheme prohibits District Court judges from performing that calculation. Suppose total damages amount to $50,000; the court would subtract Daniels' $30,000 settlement and order State Farm to pay the remaining $20,000 under the UIM policy. Even if Bowens' total injuries far exceeded $50,000, by operation of law and his own election, Bowens waived recovery beyond the $20,000 remaining under his policy. The maximum judgment a court could enter on Bowens' claim against State Farm is $20,000, the amount that remains available under the UIM policy.[4] *See Allstate*, 315 Md. at 188–93; Ins. § 19-509(g).

We illustrated this point in *Allstate Ins. Co. v. Miller*. There, the plaintiff was an insured passenger injured in a car accident. *Allstate*, 315 Md. at 184. She brought suit against the at-fault tortfeasor and filed a claim with her UIM insurance company, Allstate. *Id.* Allstate denied the plaintiff's UIM claim, and the plaintiff filed suit. *Id.* at 188. One of the issues in that case was whether the plaintiff could collect from Allstate more than the liability limits in her UIM policy. *Id.* at 183–86. The answer to that question was—

---

[4] Obviously, the result would be different if Bowens' recoverable damages under his UIM policy exceeded $30,000 or if State Farm demanded a jury trial pursuant to CJP § 4-402(e)(1). For example, if Bowens' UIM limit had been $100,000 instead of $50,000, and he claimed $100,000 in damages, then to recover the excess $70,000 (*i.e.*, $100,000 minus $30,000), Bowens would need to bring suit in the circuit court and establish damages up to $100,000.

and remains—no. *Id.* Although the jury awarded the plaintiff more in damages than the liability limits of the UIM policy, we held that the trial judge is required to adjust the verdict so that the judgment not exceed the UIM policy limit. *Id.* at 192–93. We explained that the factfinder determines tort damages, and the court then adjusts any verdict to reflect settlements and policy limits. *Id.* at 193 & n.12. The jurisdictional inquiry turns on the net dispute between the parties, not on the gross damages found against a tortfeasor.

State Farm's "functional tort case" argument also overlooks the operation of the UIM statutory scheme: once Bowens accepted Daniels' $30,000 policy limit settlement, that portion of the tort claim was extinguished and the only live controversy was Bowens' $20,000 contract claim against State Farm, which accrued when State Farm denied his UIM claim. *See Shilling*, 468 Md. at 260–61 ("[T]he statute of limitations does not begin to run against the insured until the insurer denies that claim."). We held in *Shilling* that "[t]he insurer's refusal to pay underinsured motorist benefits—*i.e.*, the breach of contract—is the event that causes the statute of limitations to run." *Id.* at 264. Nothing better illustrates that Bowens' claim sounds in breach of contract than the fact that his claim against State Farm began to accrue once State Farm denied Bowens' claim under his UIM policy, not on the date he was injured in the accident with Daniels or when Daniels' insurer tendered her UIM policy as settlement.

Although we agree that Bowens had the option to bring this action in District Court, we decline his invitation to conflate "amount in controversy" with "debt or damages claimed." State Farm correctly argues that the General Assembly used the term "debt or damages claimed" in CJP § 4-401(1) instead of "amount in controversy" for a reason.

18

"Amount in controversy" is a broader term than "debt or damages claimed."  "Amount in controversy" is generally defined as the good faith amount demanded in a plaintiff's complaint that by "legal certainty" meets or cannot exceed a jurisdictional threshold.  *See, e.g.*, *Carroll*, 306 Md. at 523–24.  In an "amount in controversy" jurisdictional analysis, a plaintiff's good faith amount demanded in their complaint may sometimes be less or more than a legally certain amount of monetary relief.  *See, e.g.*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294–95 (1938) (holding that a plaintiff's good faith demand controls the jurisdictional amount unless it appears to a legal certainty that recovery cannot meet the threshold); *Carroll*, 306 Md. at 523–24.

Finally, State Farm contends that requiring it to defend such a case in the District Court deprives it of discovery tools more readily available in the circuit court.  But this is a feature of the District Court, not a bug.  The General Assembly made that conscious choice so that District Court cases could "proceed more quickly and follow more simplified procedures than circuit court cases" resulting in "accelerated resolution and reduced legal costs."  Maryland Fiscal Note, 2007 Sess. H.B. 1109.  The court was created by constitutional amendment in 1970 to bring consistency, fairness, and justice to Maryland's lower courts.  *See Prince George's Cnty. v. Aluisi*, 354 Md. 422, 428–30 (1999).  The District Court allows Marylanders to seek justice more efficiently in relatively lower stakes cases.  Because of the more stringent requirements in circuit court (as well as concomitant costs), if Marylanders were required to bring certain cases in circuit court instead of District Court, the General Assembly may rationally have concluded that many Marylanders may not attempt to seek justice at all.  *See* District Court of Maryland, *About District Court*,

19

Maryland Judiciary, https://www.courts.state.md.us/district/about, archived at https://perma.cc/X59U-RX78 ("Many individuals choose to represent themselves, especially in civil disputes over small amounts. In that sense, the District Court is truly a people's court."). This is especially true here where State Farm controlled the direction of the general UIM matter under Ins. § 19-511 and could have litigated the tort issues in circuit court had it chosen not to consent to the tortfeasor's insurer's settlement. Because State Farm elected to consent under Ins. § 19-511 and accepted the procedural consequences of that election, it may not now assert a desire for discovery available only in a circuit court action as a basis to defeat District Court jurisdiction.

## III.

### Conclusion

For the foregoing reasons, we hold that the phrase "debt or damages claimed" in CJP § 4-401(1) is measured by the amount the plaintiff seeks from the defendant in the pending action. Here, Bowens' complaint sought $20,000 from State Farm—an amount within the District Court's $30,000 jurisdictional limit. Bowens' acceptance of the tortfeasor's $30,000 settlement and State Farm's consent thereto pursuant to Ins. § 19-511, extinguished any claim against the tortfeasor for that portion of his injuries and capped State Farm's UIM contractual liability. By consenting, State Farm waived any right to compel the insured to litigate the remaining first-party claim in circuit court when the residual claim falls within the District Court's $30,000 jurisdictional limit and does not meet the monetary threshold for requesting a jury trial in circuit court. State Farm's attempt to recast the issue as one of total tort damages, or to assert a desire for greater discovery,

20

is unpersuasive.  The judgment of the Circuit Court for Prince George's County is therefore reversed, and the case is remanded to that court with instructions to remand to the District Court for further proceedings consistent with this opinion.

**ORDER OF THE PRINCE GEORGE'S COUNTY CIRCUIT COURT IS REVERSED AND THE CASE IS TO BE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE DISTRICT COURT. COSTS TO BE PAID BY THE RESPONDENT.**